In re the Marriage of Mark J.
**PETERKA, petitioner,**
**Respondent,**

v.

**Catherine F. PETERKA, Appellant.**

No. A03–440.

Court of Appeals of Minnesota.

March 2, 2004.

John M. Mulligan, Mulligan & Bjornnes, PLLP, Minneapolis, MN, for respondent.

Sandra K. Kensy, St. Paul, MN, for appellant.

Considered and decided by
STONEBURNER, Presiding Judge,
KALITOWSKI, Judge, and
HALBROOKS, Judge.

## O P I N I O N

HALBROOKS, Judge.

In this maintenance-modification dispute, appellant argues that the district court abused its discretion by (1) awarding only a temporary monthly increase of $1,000 in her permanent spousal maintenance award, (2) ordering her to secure the services of an employment agent, and (3) denying her request for attorney fees. We conclude that the district court erred by considering the expenses associated with respondent's new family in its determination of respondent's ability to pay increased maintenance to appellant. Therefore, we reverse the district court's temporary modification award and remand for a determination of respondent's ability to pay increased maintenance without consideration of his current family expenses. However, because we conclude that the district court did not abuse its discretion in ordering appellant to secure an employment agent or in denying appellant's request for attorney's fees, we affirm the district court on those issues.

## FACTS

Appellant Catherine Peterka and respondent Mark Peterka were married for 21 years before dissolving their marriage in July 1998. The parties had enjoyed an "upper to upper middle class" standard of living during the marriage, with their income derived primarily from respondent's interests in certain home-building businesses.[1] Appellant generated a nominal income through respondent's referrals to her interior decorating business. At the time of the dissolution judgment, the district court contemplated that appellant's annual earning potential would increase to approximately $30,000 after she completed course work in electronic publishing. But even with that additional income, the court determined that appellant would still be "unable to provide adequate self support considering the standard of living established during the marriage." Consequently, the district court awarded permanent spousal maintenance to appellant. Because respondent's income at the time of the dissolution was insufficient to match the marital standard of living for either himself or appellant, the court fashioned a maintenance structure based on a sharing of the hardship between the parties. The court ordered respondent to pay maintenance of $2,000 per month for eight months, with the explicit understanding that appellant would make a "good faith, diligent effort to secure a job for which she has pursued training." Thereafter, the court ordered maintenance of $1,000 per month, unless appellant successfully moved for an extension of the $2,000 payment. The court recognized that this award would leave appellant with a monthly shortfall, but noted that respondent would be in a similar situation. The court rejected appellant's request for attorney fees.

In December 1998, appellant petitioned the court for an extension of the $2,000 monthly maintenance award, but the court denied the request. Respondent's maintenance obligation was subsequently reduced to $1,000 per month.

In May 2002, appellant, who had yet to secure the income anticipated by the disso-

---

1. Respondent owns 50 percent of Deerbrooke Construction, Inc. and is the sole owner of Mark Charles, Inc. and MBA, Inc. Respondent is also a licensed broker and four percent owner of the entity Realty House.

lution judgment, moved for increased maintenance. The district court found that appellant had met her burden of establishing a diligent, good-faith effort to secure employment. Furthermore, due to appellant's "glaring need for financial help" and respondent's "dramatic increase in income since the [judgment]," the court concluded that respondent would not suffer any hardship if the $2,000 monthly maintenance obligation were temporarily restored. Accordingly, the court ordered the $2,000 obligation to resume on a temporary basis from May 1, 2002 until further notice. The court also granted respondent's request for an evidentiary hearing to determine his income. Thereafter, appellant moved for a permanent increase in child support and spousal maintenance and sought attorney fees and costs.

At the time of the evidentiary hearing in October 2002, appellant had secured only part-time employment. Appellant argued that respondent's maintenance obligation should be increased because (1) she was not earning the $25,000 to $30,000 annual salary that the court had contemplated at the time of the judgment and (2) respondent's financial situation had substantially improved. The court agreed that this represented "a substantial change in the core circumstances upon which the [d]ecree was based."

Additionally, the court found that since the judgment, respondent had "ratcheted up his expenses by remarrying and adding two more dependents and ratcheted up his expenses a second time by substantially increasing the housing component of his standard of living." The court also found that respondent had increased his ex-

penses by his second wife's decision to quit her full-time job and return to school, by buying a Porsche, and by making substantial charitable donations. The district court distinguished cases where a former spouse uses new expenses offensively to reduce an existing maintenance obligation from this circumstance where respondent was using his expenses defensively to avoid an increase in maintenance. Based on this distinction, the court determined that respondent was "entitled to have the expenses associated with his new wife and child considered when determining his ability to pay increased maintenance to his former spouse."

In its analysis, the district court noted that one of the home-building businesses in which respondent owned an interest, Deerbrooke Construction, Inc., purchases lots to build homes, carrying the lots as inventory for future sales. The court found that Deerbrooke Construction uses bank financing for approximately 65 to 70 percent of the price of each lot, funding the remaining amount through loans between respondent's and his business partner's other companies, with any cash income being re-invested into the lot inventory. Consequently, the court suggested that "[g]iven the expensive nature of the lots in [respondent's] inventory, [the number of which is beyond their historical average, respondent] and his partner need only sell half of the 6 excess lots and they can generate enough money to pay another $1,000 per month in spousal maintenance for one more year." The court ordered respondent's maintenance obligation to increase to $2,000 per month from June 1, 2002 until June 1, 2003, when it would revert back to $1,000.[2]

---

**2.** In response to appellant's subsequent motion to amend findings, the court noted that it had merely given respondent the option of liquidating excess lots as a means for paying a temporary increase in maintenance. The court stated that respondent was free to choose not to follow this advice and to use

The court also concluded that there remained "substantial room for improvement" in appellant's job-search strategy. Based on recommendations from appellant's employment expert, the court ordered appellant to try several different techniques, including "secur[ing] the services of an agent to solicit positions on her behalf." [3] Appellant's request for attorney fees was denied.

Before this court, appellant argues that the district court abused its discretion by awarding only a temporary increase in maintenance and asserts that the court overstated respondent's monthly living expenses and income by including in those expenses associated with respondent's second family. Appellant also challenges the finding of respondent's income, the court's order requiring her to secure the services of an employment agent, and the court's denial of her request for attorney fees.

## ISSUES

1. Did the district court clearly err in finding respondent's income for maintenance purposes?

2. Did the district court overstate respondent's expenses by including in those expenses the expenses associated with his current family?

3. Did the district court fail to make adequate findings to explain the amount of the modified maintenance award?

4. Did the district court abuse it discretion by requiring appellant to work with an employment agent?

5. Should the district court have awarded appellant need-based attorney fees?

other methods in order to meet the increased obligation.

**3.** The court later rejected appellant's argument that she could not afford to hire an employment agent given her limited financial

## ANALYSIS

### I.

 Appellant challenges the determination of respondent's income for maintenance purposes. She argues that the companies in which respondent owns an interest produce more income than found by the district court and, as a result, that the district court understated respondent's ability to pay maintenance. A district court's determination of income for maintenance purposes is a finding of fact and is not set aside unless clearly erroneous. *See Schreifels v. Schreifels,* 450 N.W.2d 372, 373 (Minn.App.1990) (affirming district court's finding of net income for maintenance purposes where finding was not clearly erroneous).

We initially note that appellant's argument ignores the fact that the businesses in which respondent holds an interest are legal entities separate from respondent and, therefore, the income earned by those businesses is not automatically attributable to respondent. The district court specifically rejected appellant's argument. In doing so, it made detailed findings on respondent's income, including an extended and detailed discussion of the income-generating capacity of respondent's "web of interrelated companies." On this record, we conclude that the district court's findings are not clearly erroneous. *See Wilson v. Moline,* 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951) (stating appellate court need not "discuss and review in detail the evidence for the purpose of demonstrating that it supports the trial court's findings," and that its "duty is performed when [it] consider[s] all the evidence ...

resources. The court found that appellant spent $413 per month on an old horse that was "rarely ridden" and that those resources would easily cover the cost of an agent.

and determine[s] that it reasonably supports the findings"); *Vangsness v. Vangsness,* 607 N.W.2d 468, 474–75 & n. 1 (Minn. App.2000) (applying *Wilson* in dissolution case). Because the district court's findings of respondent's income are not clearly erroneous, it is unnecessary to address whether the evidence supports the district court's finding that the businesses may own six excess lots. We note, however, that the district court never ordered respondent to liquidate six lots, but merely suggested this as a means for paying the increase in maintenance.

## II.

■ A finding of a maintenance obligor's ability to pay maintenance is required to support an award of maintenance. *Stich v. Stich,* 435 N.W.2d 52, 53 (Minn.1989); *see* Minn.Stat. § 518.552, subd. 2(g) (2002). Here, in analyzing respondent's ability to contribute to appellant's needs while meeting his own, the district court determined that respondent was "entitled to have the expenses associated with his new wife and child considered when determining his ability to pay increased maintenance to his former spouse." In doing so, the district court recognized that existing caselaw does not specifically address a circumstance involving a motion to increase a maintenance obligation that has been asserted involving this legal theory and similar facts. The district court thoroughly surveyed the cases and distinguished between a maintenance obligor's defensive use of new expenses to avoid an increase in an existing maintenance obligation and an obligor's offensive use of new expenses as the basis for a motion to decrease an existing maintenance obligation. It then applied, by analogy, the existing caselaw to this circumstance.

■ When setting the amount and duration of a maintenance award, the district court is to consider "all relevant factors" including certain statutorily listed factors. Minn.Stat. § 518.552, subd. 2 (2002). A maintenance obligor's expenses associated with a new family are not on the list of statutory factors. *Id.* Therefore, because the district court considered the expenses associated with respondent's new family when calculating his ability to pay maintenance, the district court based its analysis, in part, on an extra-statutory factor. While the statute does not forbid consideration of extra-statutory factors, we conclude that the extra-statutory consideration of the expenses associated with respondent's second family is not appropriate here.

The purpose of a maintenance award is to allow the recipient and the obligor to have a standard of living that approximates the marital standard of living, as closely as is equitable under the circumstances. *See* Minn.Stat. § 518.552, subd. 1(a), (b), 2(c) (2002) (requiring district court to determine recipient's need for maintenance as well as amount of maintenance in light of parties' marital standard of living); *Chamberlain v. Chamberlain,* 615 N.W.2d 405, 409–11 (Minn.App.2000) (discussing importance of marital standard of living in addressing maintenance recipient's need for maintenance), *review denied* (Minn. Oct. 25, 2000); *cf. Prange v. Prange,* 437 N.W.2d 69, 71 (Minn.App. 1989) (stating maintenance award was meant to "supplement [recipient's] other income so that she can continue to live in close approximation to the standard of living she had in the marriage"), *review denied* (Minn. May 12, 1989). Thus, a maintenance obligor has a duty, to the extent equitable under the circumstances, to support the maintenance recipient at the mar-

ital standard of living.[4] And that duty persists after an obligor's remarriage. *See* Minn.Stat. § 518.68, subds. 1, 2 (2002) (requiring maintenance-related orders to include a notice stating, among other things, that parties who accept additional obligations of support do so with the "full knowledge" of their prior obligations); Minn. R. Gen. Pract. 303.06(d) (same); *see generally Ramsay v. Ramsay*, 305 Minn. 321, 323, 233 N.W.2d 729, 731 (1975) (reversing district court's termination of maintenance obligation, stating, among other things, "[n]or is the fact of [obligor's] remarriage ... sufficient change of circumstances to support a termination of alimony"); *Schroeder v. Schroeder*, 405 N.W.2d 267, 269 (Minn.App.1987) (affirming denial of motion to reduce maintenance, stating "[obligor's] remarriage by itself is insufficient to support a reduction or termination of maintenance"); *Halvorson v. Halvorson*, 402 N.W.2d 168, 172 (Minn.App.1987) (affirming denial of motion to reduce maintenance, stating "[obligor's] remarriage is an insufficient change of circumstances to support a termination of maintenance"). Indeed, if a substantial increase in the income of a maintenance obligor renders the existing maintenance award unreasonable and unfair, a maintenance obligation can be modified, despite the lack of an increase in the maintenance recipient's reasonable monthly expenses. Minn.Stat. § 518.64, subd. 2(a)(1) (2002).

The statutory framework for the setting and modification of maintenance awards implicitly acknowledges that a sub-marital-standard-of-living maintenance award may be initially equitable, but it also recognizes that circumstances can change to render such an award unreasonable and unfair

and justify imposition on the obligor of all or part of the remainder of the obligor's duty to support the recipient at the marital standard of living. Because that duty arises from the dissolution judgment, it preexists obligations later incurred and takes precedence over them. Minn.Stat. § 518.68, subds. 1, 2; Minn. R. Gen. Pract. 303.06(c). Because this case involves an attempt to increase a sub-marital-standard-of-living maintenance obligation to an amount that would reflect the marital standard of living and because no extraordinary circumstances were found to exist, respondent is not entitled to have the postjudgment expenses associated with his second family considered in the calculation of his ability to pay maintenance under the judgment. We, therefore, reverse the portion of the district court's ruling that calculates respondent's ability to pay maintenance based on consideration of respondent's expenses associated with his new family and remand to the district court for recalculation of respondent's ability to pay maintenance. If, on remand, the district court finds the existence of extraordinary circumstances that justify the consideration of the expenses associated with respondent's new family, it should make the appropriate findings.

### III.

■ Appellant argues that the district court failed to make adequate findings to explain its maintenance ruling because, rather than analyzing the factors in Minn. Stat. § 518.552, subd. 2, the district court "determined that there should be a temporary increase in maintenance and then 'released' enough retained earnings to justify the finding of respondent's ability to fund the temporary increase." Because we are

---

4. We note that determining the financial extent of a maintenance obligor's duty to assist a maintenance recipient in approximating the marital standard of living requires consideration of the maintenance recipient's ability to provide self-support. Minn.Stat. § 518.552, subds. 1, 2(a), (b) (2002).

remanding the maintenance issue to the district court for recalculation, we need not address appellant's argument concerning the adequacy of the district court's findings. We note, however, that the district court is not required to make specific findings on every statutory factor if the findings that were made reflect that the district court adequately considered the relevant statutory factors. *Rosenfeld v. Rosenfeld,* 311 Minn. 76, 83, 249 N.W.2d 168, 172 (1976). We also note that this concept is applicable where, as here, multiple orders are used to resolve a question. *See, e.g., Hellerstedt v. Hellerstedt,* 409 N.W.2d 65, 68 (Minn.App.1987) (stating that "[a]lthough the trial court did not specifically discuss all the statutory factors in its last order ... the trial court's discussion of the previous orders, the disparity in incomes and needs, and the proviso for repayment [were] sufficient to indicate the statutory factors were considered"), *review denied* (Minn. Sept. 30, 1987). Based on our review of the district court's multiple orders in this matter, it is clear that the district court gave thorough and explicit consideration to the relevant statutory factors.

### IV.

Appellant contends that given her financial circumstances, the district court abused its discretion by ordering her to work with an employment agent during her job search. We disagree. Appellant's own vocational expert made this recommendation, and the court specifically found that appellant has "the resources to hire an agent, she just chooses to spend the resources elsewhere." As the district court recognized, appellant's "economic future is at stake." Because the court resolved the issue in a logical manner consistent with the facts on the record, we find no abuse of discretion. *See Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984).

### V.

Appellant challenges the denial of her request for attorney fees, alleging that she should have been awarded need-based attorney fees under Minn.Stat. § 518.14, subd. 1 (2002). A district court shall award need-based attorney fees if the fees are needed for a party's good faith assertion of rights, the payor can pay the fees, and the recipient cannot. *Id.* Here, the district court specifically noted that "[m]uch of [appellant's] attorney fee liability herein was the product of unnecessary litigation that did not rise to the level of good faith." In addition, the court found that respondent's decision to establish a charitable trust in 2001 was not relevant to a determination of his ability to pay appellant's fees two years later. On this record, these findings are not clearly erroneous. Because appellant did not satisfy the statutory factors for an award of need-based attorney fees, the district court's refusal to award fees was not improper.

### DECISION

Because the record supports the district court's findings regarding respondent's income and appellant's ineligibility for need-based attorney fees, we affirm those aspects of the district court's ruling. Because the district court did not abuse its discretion by requiring appellant to work with an employment agent, we also affirm that portion of the district court's ruling. But because we conclude that respondent is not entitled to have the expenses associated with his new family considered in the calculation of his ability to pay maintenance, we reverse that portion of the district court's order and remand for a redetermination based on respondent's recalculated ability to pay maintenance. Whether to reopen the record on remand

shall be discretionary with the district court.

**Affirmed in part, reversed in part, and remanded.**