**In re the Matter of Mohammed Monirul ALAM, Petitioner, Appellant,**

v.

**Salina CHOWDHURY, Respondent.**

No. A08–0636.

Court of Appeals of Minnesota.

April 14, 2009.

Paul A. Banker, Brittany Stephens Pearson, Lindquist & Vennum P.L.L.P., Minneapolis, for appellant.

Gregory R. Solum, Edina, for respondent.

Considered and decided by WORKE, Presiding Judge; HUDSON, Judge; and CONNOLLY, Judge.

## OPINION

HUDSON, Judge.

On appeal from an amended dissolution judgment, appellant argues that the district court (1) abused its discretion by reopening the judgment for fraud on the court, and (2) erred by treating the post-dissolution increase in value of appellant's retirement account as marital property. We affirm in part, reverse in part, and remand.

### FACTS

Appellant Mohammed Monirul Alam and respondent Salina Chowdhury were married on July 29, 1979, in Dahka, Bangladesh. On July 10, 2001, appellant petitioned to dissolve the parties' marriage. He presented respondent with a marital termination agreement (MTA) for her to sign, but she did not sign the MTA and failed to answer to the dissolution petition.

A default hearing occurred on October 16, 2001, at which appellant submitted the same proposed MTA that he had presented to respondent. The resulting dissolution judgment divided the parties' assets in a manner consistent with appellant's proposed MTA. The only exception was that appellant agreed to assume full responsibility for several expenses related to the parties' home that were designated in the proposed MTA to be divided evenly among the parties.

The parties continued to live together until August 31, 2004. Appellant subsequently remarried on December 17, 2004. On January 20, 2006, respondent moved to vacate the dissolution judgment. Her supporting affidavit alleged that appellant committed fraud on the court because appellant's proposed MTA overvalued the household property and jewelry awarded to respondent, claimed a $20,000 premarital savings that appellant could not substantiate, and attributed to respondent a "pending inheritance" that she never received. Respondent also claimed that when she refused to sign the proposed MTA, appellant promised her that she would receive an equal share of the parties' assets if she did not contest the divorce. She acknowledged that she was served with the petition for divorce, but asserted that she did not receive any further written notices of proceedings, did not receive a copy of the judgment and decree, and learned about the divorce only after child support payments were deposited into her bank account.

At a hearing on her motion to vacate the judgment, respondent testified consistently with the allegations in her affidavit. Appellant testified that he estimated the value of the household goods and respondent's jewelry to the best of his knowledge. He admitted that he did not give respondent notice of the default hearing and acknowledged that he could not trace his premarital savings. He also acknowledged that he did not know whether respondent had actually received an inheritance but said that she was supposed to receive one, which is why he labeled the inheritance as "pending." Appellant denied promising respondent an equal share of their assets.

The district court determined that respondent's testimony was credible and that appellant's testimony was not credible, finding that appellant "intentionally overstated the value of the parties' household goods and jewelry awarded to [respondent]; included in the award of assets to [r]espondent an inheritance which she did not receive ... and claimed a non-marital interest in the parties' joint savings account, which he is unable to prove." As a result, the district court held that appellant "engaged in an intentional course of material misrepresentation and non-disclosure of assets which misled the Court and made the property settlement grossly unfair to [r]espondent." The district court vacated the original judgment and decree, except for the provision terminating the parties' marriage.

After a new trial, the district court issued an amended judgment which, among other things, valued appellant's retirement account as of December 31, 2006, and distributed the entire value of the account as marital property. Appellant requested that the district court amend its valuation and distribution of his retirement account, arguing that the contributions made to the account after October 16, 2001—the date his marriage to respondent was dissolved—were not marital property and should have been awarded solely to him. The district court denied appellant's request. This appeal follows.

## ISSUES

I. Did the district court abuse its discretion by reopening the dissolution judgment for fraud on the court?

II. Did the district court err by treating the post-dissolution increase in the value of appellant's retirement account as marital property?

## ANALYSIS

### I

Appellant challenges the vacation of the dissolution judgment, arguing that the record does not show the existence of fraud on the court. We reject this argument.

### A. *Timing*

Generally, after the time to appeal expires, a dissolution judgment is final unless a party establishes a statutory basis for its reopening. Minn.Stat. § 518.145, subds. 1, 2 (2008). The statutory bases for reopening an otherwise final dissolution judgment include the distinct concepts of fraud and fraud on the court. *See* Minn.Stat. § 518.145, subd. 2(3) (listing fraud as one of several bases to reopen a dissolution judgment); Minn.Stat. § 518.145, subd. 2 (noting that the subdivision's list of reasons to reopen a dissolution judgment does not limit the court's power "to set aside a judgment for fraud upon the court"); *Maranda v. Maranda*, 449 N.W.2d 158, 165 (Minn.1989) (distinguishing fraud from fraud on the court); *Doering v. Doering*, 629 N.W.2d 124, 128–30 (Minn.App.2001) (same), *review denied* (Minn. Sept. 11, 2001).

A motion to vacate a judgment for fraud must be made within a reasonable time but not more than one year after entry of the judgment. Minn.Stat. § 518.145, subd. 2. But "[t]he significance of a finding of fraud on the court is that it eliminates the time restriction for bringing a motion to vacate a judgment." *Maranda*, 449 N.W.2d at 165. Here, because respondent moved to reopen the dissolution judgment more than one year after its entry, she had to show fraud on the court for the judgment to be reopened.

### B. *Fraud on the Court*

■ Fraud on the court involves "an intentional course of material misrepresentation or non-disclosure, having the result of misleading the court and opposing counsel and making the property settlement grossly unfair." *Maranda*, 449 N.W.2d at 165. A district court's decision to reopen the judgment and decree based on fraud on the court will be sustained absent an abuse of discretion. *Kornberg v. Kornberg*, 542 N.W.2d 379, 386 (Minn.1996). If there is evidence to support the district court's decision, an abuse of discretion will not be found. *Prahl v. Prahl*, 627 N.W.2d 698, 702 (Minn.App.2001). When evidence relevant to a factual issue consists of conflicting testimony, the district court's decision is necessarily based on a determination of witness credibility, which we accord great deference on appeal. *Haefele v. Haefele*, 621 N.W.2d 758, 763 (Minn.App. 2001), *review denied* (Minn. Feb. 21, 2001); *see Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988) (stating that appellate courts defer to district court credibility determinations).

■ In her affidavit to the district court, respondent alleged that appellant made several misrepresentations to the district court regarding the parties' assets. She also stated that appellant promised her that she would receive an equal share of the parties' assets if she did not contest the divorce. At the hearing on her motion to reopen the judgment, respondent testified consistent with the allegations in her affidavit. While appellant testified to the contrary, the district court found both that

respondent's testimony was credible and that appellant's testimony was not credible.

Given the district court's explicit credibility findings, the record and all reasonable inferences drawn therefrom support the district court's finding that appellant engaged in a course of material misrepresentation. *See Lossing v. Lossing,* 403 N.W.2d 688, 690 (Minn.App.1987) (stating that, when reviewing whether findings of fact are clearly erroneous, appellate courts view the evidence and its reasonable inferences therefrom in the light most favorable to the district court's findings). Further, because the district court found that appellant made a series of misrepresentations, the pattern of misrepresentations justifies an inference that the misrepresentations were intentional. *See generally, Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn.1978) (stating that a court may infer an intent to injure, as a matter of law, if "the character of the act is such that an intention to inflict an injury can be inferred"); *Boniek v. Boniek,* 443 N.W.2d 196, 198 (Minn.App.1989) (affirming the issuance of an order for protection where facts existed allowing the inference of present intent by a former spouse to inflict fear of imminent physical harm). Thus, the record contains sufficient evidence to support the district court's finding that appellant committed fraud on the court.

In support of his claim, appellant relies on *Kornberg,* in which the supreme court held that there was no fraud where the appellant-wife put forth only a general claim that respondent-husband made misrepresentations to the district court. 542 N.W.2d at 388. Appellant suggests that the allegations respondent made in her "sparse affidavit" are similar to the general allegations in *Kornberg.* But, unlike the wife in *Kornberg,* respondent's allegations in her affidavit are precise allegations of specific misrepresentations that appellant made regarding the parties' household goods, respondent's jewelry, appellant's premarital savings, and respondent's expected inheritance.

Appellant's reliance on *Haefele* to argue that this record does not show fraud on the court is also unpersuasive. There, we concluded that the value differences at issue were likely a result of "a combination of carelessness, haste, use of improper valuation methods and lack of experience in valuing art [that] may have contributed to the mistaken property valuations." 621 N.W.2d at 764. Here, however, the district court rejected appellant's explanations of the alleged value differences, explicitly finding that appellant's testimony on the matter was not credible. We defer to the district court's credibility determination.

Appellant also argues that he could not have misled respondent or the district court because he presented the proposed MTA to respondent before presenting it to the district court, and, therefore, respondent was aware of the proposed valuations and had the opportunity to contest them. But respondent alleged that appellant promised her an equal share of the assets if she did not contest the divorce. Given that the district court found respondent's testimony credible, there is sufficient evidence to show that appellant misled respondent by misrepresenting the share of assets respondent would receive upon termination of the marriage. Moreover, there is ample evidence that appellant made a series of intentional misrepresentations to the district court regarding the parties' assets, which allows the inference that appellant misled the district court.

Finally, appellant avers that there is no evidence that the terms of the 2001 judgment and decree are grossly unfair. In

support of this claim, appellant cites to *Sanborn v. Sanborn,* 503 N.W.2d 499, 503–04 (Minn.App.1993), *review denied* (Minn. Sept. 21, 1993), in which we affirmed a finding of fraud on the court where the appellant-husband misrepresented the value of his business by hundreds of thousands of dollars. Appellant argues that any value differences here are "minimal" when compared to the value difference in *Sanborn,* and therefore the terms of the 2001 judgment and decree are not grossly unfair.

But a finding of fraud on the court is "made under the peculiar facts of each case." *Maranda,* 449 N.W.2d. at 164 (citing *Lindsey v. Lindsey,* 388 N.W.2d 713, 716 (Minn.1986)). Here, respondent's affidavit alleged that appellant overstated the value of their household goods by $8,000, overstated the value of respondent's jewelry by $24,000, claimed a $20,000 premarital savings that he could not substantiate, and attributed a $17,000 inheritance to respondent that respondent never received. On this record, and in light of the size and nature of the parties' marital estate, we will not alter the district court's finding that this series of valuation errors favoring appellant by $69,000 rendered the original judgment grossly unfair.

Because this record supports the finding of fraud on the court, the district court did not abuse its discretion by reopening the parties' 2001 dissolution judgment.

## II

■■ There was a substantial increase in the value of appellant's retirement account between the 2001 dissolution of the parties' marriage and the proceeding to reopen the judgment. Believing it inequitable to do otherwise, the district court treated that increase as marital property, and valued and divided it accordingly. Appellant challenges these decisions. Whether property is marital or nonmarital is a question of law that we review de novo. *Olsen v. Olsen,* 562 N.W.2d 797, 800 (Minn. 1997). Regarding valuation dates,

> [t]he court shall value marital assets for purposes of division between the parties as of the day of the initially scheduled prehearing settlement conference, unless a different date is agreed upon by the parties, or unless the court makes specific findings that another date of valuation is fair and equitable. If there is a substantial change in value of an asset between the date of valuation and the final distribution, the court may adjust the valuation of that asset as necessary to effect an equitable distribution.

Minn.Stat. § 518.58, subd. 1 (2008).

Here, the district court found that a 2001 valuation date would create inequities in the distribution of the parties' assets because the parties continued to live together after the dissolution of their marriage in 2001, which, according to the district court, allowed appellant to reduce his living expenses and make large contributions to his retirement account. As a result, the district court set the valuation date for appellant's retirement account as December 31, 2006, stating that this valuation date would allow a more equitable division of the cohabitation-related increase in the account's value.

The district court then cited to Minn. Stat. § 518.003, subd. 3b (2008), for the proposition that property acquired before a valuation date is presumed to be marital property. Because the increase in the value of appellant's retirement account occurred before the newly imposed December 1, 2006 valuation date, the district court ruled that the increase in value was marital property and divided the increase accordingly. We reject this analysis.

First, the analysis misapplies the statutory presumption regarding marital property. Under Minn.Stat. § 518.003, subd. 3b:

> "Marital property" means property ... acquired by the parties, or either of them, to a dissolution ... *at any time during the existence of the marriage relation between them*, or at any time during which the parties were living together as husband and wife under a purported marriage relationship ... but prior to the date of valuation under section 518.58, subdivision 1. All property acquired by either spouse subsequent to the marriage and before the valuation date is presumed to be marital property....

(Emphasis added.) The statute does say that "[a]ll property acquired by either spouse subsequent to the marriage and before the valuation date is presumed to be marital property[,]" and that portion of the statute, if taken out of context, could justify the district court's decision to treat the contested portion of appellant's retirement account as marital property. But doing so ignores the portion of the statute's prior sentence requiring the property in question to be acquired by one or both of the parties "at any time during the existence of the marriage relation between them[.]" [1]

Here, it is undisputed that the parties' marriage was dissolved in 2001. Thus, during their post-dissolution cohabitation, they were not living in a marital or purportedly marital relationship; accordingly, property acquired during that cohabitation was not marital. Because the district court's application of the presumption of marital property ignores the part of the statute requiring a marital or purportedly marital relationship, the district court's application of the presumption runs afoul of the requirement that "[e]very law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 (2008).

Second, when a district court uses a valuation date other than the date of the initially scheduled prehearing settlement conference, the date usually bears a rational relationship to the facts of the dissolution in question. *See Desrosier v. Desrosier*, 551 N.W.2d 507, 510 (Minn.App.1996) (using date of separation as opposed to date of pretrial conference); *March v. March*, 435 N.W.2d 569, 572 (Minn.App. 1989) (using date of the dissolution trial as opposed to an earlier date). Here, however, not only does the December 2006 valuation date bear no rational relationship to the October 2001 dissolution date, the use of a valuation date so far removed from the date of dissolution has the potential to cause significant mischief, if not outright havoc, in property distributions. Specifically, because appellant remarried in December 2004, the contributions that he made to his retirement account after his remarriage are presumptively part of the marital estate of his subsequent marriage. Minn.Stat. § 518.003, subd. 3b. By using a 2006 valuation date, the district court awarded to respondent property in which appellant's current wife has an interest. *Id.*

Because we reject the district court's analysis as inconsistent with both Minn. Stat. § 518.003, subd. 3b, and the integrity of the marital estate of appellant's subsequent marriage, we reverse the characterization of the post-dissolution increase in

---

1. We acknowledge that marital property can also include the proceeds of an asset acquired during the existence of a marital relationship. But because appellant does not raise any challenges regarding the proceeds of his retirement account, we express no opinion on this matter.

the value of appellant's retirement account as marital property. On remand, the district court shall identify the marital portion of appellant's retirement account, select a valuation date for the marital portion of the account that is consistent with Minn. Stat. § 518.58, subd. 1, and equitably divide the marital interest in that account.

## DECISION

The record supports the district court's finding of fraud on the court, and we affirm the district court's decision to reopen the 2001 judgment dissolving the parties' marriage. But it was error for the district court to characterize and distribute as marital property the post-dissolution increase in the value of appellant's retirement. Thus, we reverse the district court's characterization and distribution of appellant's retirement account and remand for the district court to readdress the question in a manner not inconsistent with this opinion.

We recognize that our decision reduces the value of the parties' marital assets and increases the value of appellant's nonmarital assets. In light of our decision, the district court may reopen the judgment and decree and redistribute the parties' marital assets if the district court finds redistribution necessary to achieve the equitable distribution of marital property required by Minn.Stat. § 518.58, subd. 1. If, after distributing the parties' assets, the district court finds that respondent's resources or property, including her portion of the marital property, are so inadequate as to work an unfair hardship, the district court may apportion, pursuant to Minn. Stat. § 518.58, subd. 2 (2008), up to one-half of appellant's nonmarital property to respondent, provided that the district court makes the findings required by the statute to support the apportionment.

Finally, we acknowledge that because there may have been significant passive changes in the value of the marital portion of appellant's retirement account since the dissolution of the parties' marriage, neither party may be entitled to the number of dollars from that account that they might have received at the time of the dissolution. Therefore, when dividing the marital portion of appellant's retirement account on remand, and any other asset(s) addressed on remand, the district court shall make detailed findings explaining its division of the asset(s) and the rationale for that distribution.

**Affirmed in part, reversed in part, and remanded.**

WORKE, Judge (dissenting).

I respectfully dissent. To reopen a marriage-dissolution judgment and decree nearly five years after entry of the judgment requires the moving party to prove fraud on the court. *Lindsey v. Lindsey*, 388 N.W.2d 713, 716 (Minn.1986) (stating district court has inherent authority to reopen decree only when circumstances amount to fraud on the court); *Haefele v. Haefele*, 621 N.W.2d 758, 765 (Minn.App. 2001) (stating moving party bears burden of proof), *review denied* (Minn. Feb. 21, 2001). This requires the moving party to prove an "intentional course of material misrepresentation or non-disclosure, having the result of misleading the court and ... making the property settlement grossly unfair." *Maranda v. Maranda*, 449 N.W.2d 158, 165 (Minn.1989). A district court's decision whether to reopen the judgment and decree based on fraud on the court will be sustained absent an abuse of discretion. *Id.* at 164. If there is evidence to support the district court's decision, an abuse of discretion will not be found. *Prahl v. Prahl*, 627 N.W.2d 698, 702 (Minn.App.2001). In my opinion re-

spondent has not met that burden. Because disregard of legal process and lack of due diligence in objecting to the dissolution weigh heavily against reopening the judgment and decree after so much time has passed, I part from the majority, and determine that the district court abused its discretion by vacating the judgment and decree.

The majority's recitation of the facts fails to consider respondent's responsibilities to the legal process. Appellant commenced marriage-dissolution proceedings in July 2001. Respondent was personally served by a sheriff's deputy. In August, the parties and their two children met to discuss the divorce. Appellant presented respondent with a marital-termination agreement (MTA) that he prepared with the assistance of a paralegal service. Respondent contends that she needed her daughters to explain the document to her. But appellant asserts that respondent taught English in Bangladesh for 14 years before moving to the United States. And our review of the record shows that respondent lived in the United States for over a decade before appellant commenced the proceedings, she worked outside of the home, and the hearing transcripts demonstrate that she clearly understood the questions presented to her and appropriately responded. Respondent did not sign the agreement and she did not seek counsel. Respondent failed to file an answer and the matter proceeded to default. The district court held a hearing on October 16, 2001. Appellant appeared pro se and respondent did not appear. Appellant was questioned by the court and presented the court with the MTA that he had presented to respondent. The district court incorporated virtually the identical version of the MTA in the judgment and decree.

Following entry of the judgment and decree, appellant steadfastly fulfilled his financial requirements, including timely payment of child support for one minor child. Respondent acknowledges awareness of the dissolution when child-support payments were deposited into her account. The parties continued to reside together until August 2004, when their youngest daughter left home to attend college. In December 2004, appellant remarried. He asked respondent to sell the homestead or buy out his interest in the home. It was at this point that respondent hired an attorney. In September 2005, respondents counsel asked appellant to pay for repairs to the homestead. Importantly, there was no accompanying request to reopen the judgment and decree. Several months later, respondent moved to reopen the decree, challenging the valuation of jewelry, household goods, and her savings account. Respondent's accompanying affidavit failed to produce evidence to support her claim that the goods were misvalued. After a hearing in front of a different district court judge, the court vacated the judgment and decree and conducted a trial on the submitted issues.

My review of the record discerns no evidence to support the conclusion that appellant engaged in an intentional course of material misrepresentation or non-disclosure. Appellant provided his best estimates regarding valuation of the marital property that was available to him. The fact that some of the values may not have been accurate does not provide a basis for a finding of intentional course of material misrepresentation. Respondent was well aware of the valuation of the assets, but she did nothing to challenge the alleged faulty valuations. In a dissolution proceeding, a difference in opinion about valuation is likely the norm. But this difference of opinion does not create an inference of intentional misrepresentation.

Finally, respondent claimed that she refused to sign the proposed settlement because the terms were unfair. But the record does not show that the terms of the judgment and decree are grossly unfair. Respondent challenged only the valuation of a few specific items and those challenges amount to a mere fraction of the marital estate. The majority distinguishes the present case from *Kornberg,* reasoning that respondent made very precise valuation allegations. But the proper time to contest the valuations was at the time of the dissolution or within the first year after the entry of judgment.

The majority also places great weight on the fact that respondent's affidavit alleges that appellant promised her that she would receive an equal share of assets if she did not contest the divorce. But respondent was aware of the proposal for settlement and did nothing. Instead respondent waited nearly five years and now argues that she did not know that the divorce was happening. Not only is respondent's allegation self serving but it underlies the fact that she knew the divorce was commencing.

Because respondent failed to act for nearly five years and the record fails to support a finding that appellant (1) engaged in an intentional course of material misrepresentation or non-disclosure; (2) which misled the court and opposing counsel; or (3) that the property settlement was grossly unfair, I conclude that the district court abused its discretion by vacating the judgment and decree. I, therefore, take no part in the majority's conclusion regarding the marital-property issue.