*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-0363**

In re the Marriage of:

Ryan Russell Preusse, petitioner,
Appellant,

vs.

Amanda Jayne Preusse,
Respondent.

**Filed May 19, 2025
Affirmed in part and remanded
Larson, Judge**

Dakota County District Court
File No. 19AV-FA-22-400

Ryan Russell Preusse, Rosemount, Minnesota (self-represented appellant)

James S. Carlson, Carlson Law Office, PA, Burnsville, Minnesota (for respondent)

Considered and decided by Slieter, Presiding Judge; Cochran, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

Self-represented appellant Ryan Russell Preusse (husband) appeals the district court's decision to award respondent Amanda Jayne Preusse (wife) $1,600 per month in temporary spousal maintenance for six years. Husband challenges the district court's calculation of both parties' income and reasonable budgets, and findings regarding his

ability to pay spousal maintenance. Because we conclude the district court made clearly erroneous findings when it calculated husband's reasonable budget and determined husband's ability to pay spousal maintenance, we remand in part. We otherwise affirm.

**FACTS**

Husband and wife were married on February 27, 2010, and have two joint minor children. After roughly 12 years of marriage, husband petitioned for dissolution. The parties agreed that April 6, 2022, was the valuation date for the dissolution. The parties resolved many issues by stipulation, and the district court entered a November 16, 2022 partial judgment addressing those issues. The partial judgment awarded the parties equal parenting time. The district court then held a bench trial to decide the remaining issues; specifically, the division of marital property and debt obligations, spousal maintenance, child support, and attorney fees. Six witnesses testified at the bench trial: husband, wife, husband's vocational expert, husband's financial expert, wife's financial expert, and husband's mother (mother). Mother owned Mobile Electronic Fingerprinting (MEF), where wife was previously employed. Following the bench trial, the district court entered its judgment and decree in October 2023, and an amended judgment and decree in January 2024. The district court made the following relevant findings and determinations.

With respect to husband's income, the district court found that husband worked as a captain at the local fire department, earning approximately $8,636 per month.[1] Husband used to be a member of the Air Force Reserves, earning approximately $740 per month,

_____

[1] Testimony reflects that husband was promoted to captain in July 2019, and this calculation reflected the accompanying pay increase.

2

but voluntarily terminated his employment in September 2022. The district court determined that husband terminated his employment in bad faith to reduce his income during the dissolution proceedings. Husband also received non-taxed Department of Veterans Affairs (VA) disability pay at $1,164.44 per month. In addition, husband worked extra jobs during the marriage. Based on this, the district court imputed an additional $475 per month in income to husband. Therefore, the district court found husband's gross monthly income totaled $10,275.

With regard to wife's income, the district court noted that wife does not have a post-secondary degree. During the marriage, wife worked at MEF earning $33 per hour. Wife had a flexible work schedule to accommodate husband's work and childcare, which did not impact her wages. The district court found wife testified credibly that her work involved fingerprinting and simple office work, such as inserting tracking information on a spreadsheet. The district court determined that wife "technically resigned from her employment" after a conflict at work.[2] But the district court discredited mother's testimony that wife could return to work at MEF, explicitly finding the testimony "disingenuous" given the deterioration in the relationship between wife and mother. Thus, the district court concluded it was "reasonable that [wife] would not continue to work at MEF" with mother.

The district court found that, following her resignation from MEF, wife applied for multiple positions and, ultimately, obtained a job as an assistant teacher at a local school in

---

[2] Wife returned from a leave-of-absence, and mother's attorney told her to leave and escorted her from the office—causing wife to believe she was terminated.

July 2022.[3] As an assistant teacher, wife made $17.10 an hour and worked around 35 hours per week (but she could work up to 40 hours per week). Based on wife's current employment, the district court found that she earned a gross monthly income of $2,961.72 when working full time. The district court also found that mother gave wife preferential treatment at MEF and, therefore, it was not reasonable that wife could obtain a job earning the same amount of money—even if she worked in the same field.

Moving to budgets, the district court determined that the parties "enjoyed a comfortable middle-class marital standard of living." Husband's budget claimed monthly expenses of $6,912, including, as relevant here: (1) $850 for food ($600 for groceries and $250 for meals out/lunches at work) and (2) $300, in part, under "recreation" ($100 for "entertaining" and $200 on vacations). Wife's budget claimed monthly expenses of $5,803 that included, as relevant here: (1) $2,200 for rent; (2) $700 for credit-card payments attributed to her removal from the marital home in April 2022; (3) $850 for food ($450 on groceries, $150 on lunches, and $250 on meals out); (4) $200 for recreation; and (5) $283 for medical and dental expenses. The district court found husband's food costs "inflated and unnecessary," and reduced husband's budget to $6,600 per month. The district court found wife's expenses "reasonable," but reduced her budget to $5,720 per month by removing the medical and dental costs—ordering husband to keep wife on his health insurance—and including an additional $200 per month for automobile insurance.

---

[3] Wife is considering returning to school to obtain her teaching degree.

Given wife's gross income of $2,962 per month and her monthly budget of $5,720, the district court determined wife had a shortfall of around $2,758 to meet her needs. The district court also determined husband could afford spousal-maintenance payments because he "traditionally . . . earn[ed] over three times as much income as [wife]," his "monthly budget [was] somewhat overstated and unreasonable," and he had "additional imputed 'side work' income." Therefore, based on its determinations on the parties' budgets, income, wife's reasonable needs and her need for further education to become self-sufficient, and husband's ability to meet his own needs while also contributing to wife's needs, the district court ordered husband to pay wife temporary spousal maintenance for six years (half the length of the marriage) in the amount of $1,600 per month. The district court also ordered husband to pay wife a $130,881.20 cash equalizer for the division of marital property.

Husband appeals the spousal-maintenance award.

## DECISION

Husband challenges the district court's decision to award wife $1,600 per month in temporary spousal maintenance. We review a district court's decision to award spousal maintenance for an abuse of discretion. *See Curtis v. Curtis*, 887 N.W.2d 249, 252 (Minn. 2016). A district court abuses its discretion "if it makes findings of fact that are not supported by the record, misapplies the law, or resolves the matter in a manner that is contrary to logic and the facts on record." *Madden v. Madden*, 923 N.W.2d 688, 696 (Minn. App. 2019).

5

Maintenance is defined as "an award made in a dissolution or legal separation proceeding of payments from the future income or earnings of one spouse for the support and maintenance of the other." Minn. Stat. § 518A.003, subd. 3a (2022).[4] Spousal maintenance can be awarded when a party shows sufficient, reasonable need. *See Kampf v. Kampf*, 732 N.W.2d 630, 633 (Minn. App. 2007), *rev. denied* (Minn. Aug. 21, 2007). "If a party requests spousal maintenance, a district court must engage in a two-step analysis." *Backman v. Backman*, 990 N.W.2d 478, 484 (Minn. App. 2023). First, the district court must determine whether the spouse seeking spousal maintenance either:

> (a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or
> (b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn. Stat. § 518.552, subd. 1 (2022); *see also Lyon v. Lyon*, 439 N.W.2d 18, 22 (Minn. 1989) (stating that award of spousal maintenance requires showing of need). If the district court determines a need for spousal maintenance exists, the district court shall award spousal maintenance "in amounts and for periods of time, either temporary or permanent, as the court deems just, without regard to marital misconduct, and after considering all

---

[4] The legislature updated the spousal-maintenance statute in 2024, but the relevant order on appeal was decided before these updates took effect. *See* 2024 Minn. Laws ch. 101, art. 2, §§ 1-8, at 869-73. Therefore, we apply the prior version of the statute.

relevant factors." *Id.*, subd. 2 (2022). Some factors the district court must consider, include: "the financial resources of the party seeking maintenance"; "the standard of living established during the marriage"; losses "forgone by the spouse seeking spousal maintenance," such as earnings and other employment opportunities; "the ability of the spouse from whom maintenance is sought to meet [their] needs while meeting those of the spouse seeking maintenance"; and contributions by either spouse "in furtherance of the other party's employment or business." *Id.*, subd. 2(a), (c), (e), (g), (h).

Husband argues that the district court incorrectly: (1) calculated both parties' incomes; (2) calculated both parties' budgets; and (3) found husband has the ability to pay $1,600 per month in temporary spousal maintenance.[5] Husband's arguments primarily challenge the district court's factual findings. We review factual findings for clear error. *Peterka v. Peterka*, 675 N.W.2d 353, 357 (Minn. App. 2004). In doing so, we (1) view the evidence in the light most favorable to the findings; (2) do not find our own facts; (3) do not reweigh the evidence; and (4) do not reconcile conflicting evidence. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021); *see also Ewald v. Nedrebo*, 999 N.W.2d 546, 552 (Minn. App. 2023) (citing *Kenney* in a family law appeal), *rev. denied* (Minn. Feb. 28, 2024). Thus, we

> need not go into an extended discussion of the evidence to
> prove or demonstrate the correctness of the findings of the

---

[5] Any other issues husband attempted to raise are inadequately briefed and not properly before our court. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982); *Francis v. State*, 781 N.W.2d 892, 896 (Minn. 2010) (stating that self-represented party who appears pro se "is held to the standard of an attorney in presenting his appeal"). To the extent that husband challenges credibility determinations, we defer to the district court. *See Alam v. Chowdhury*, 764 N.W.2d 86, 89 (Minn. App. 2009).

[district] court. Rather, because the factfinder has the primary responsibility of determining the fact issues and the advantage of observing the witnesses in view of all the circumstances surrounding the entire proceeding, [our] duty is fully performed after [we have] fairly considered all the evidence and [have] determined that the evidence reasonably supports the decision.

*Kenney*, 963 N.W.2d at 222 (quotations and citation omitted); *see also Vangsness v. Vangsness*, 607 N.W.2d 468, 472, 474 (Minn. App. 2000) (discussing the clear-error standard in a similar fashion). With this standard in mind, we address husband's arguments.

## A.

When determining whether to award spousal maintenance, the district court's overall focus is on "the financial needs of [the spouse seeking maintenance] and [their] ability to meet those needs balanced against the financial condition [of the spouse from whom maintenance is sought]." *Erlandson v. Erlandson*, 318 N.W.2d 36, 39-40 (Minn. 1982). Husband first challenges the district court's financial-need and financial-condition findings, arguing the district court clearly erred in its calculation of both parties' income.

### 1. Wife's Income

Husband disputes several findings related to wife's income, including the district court's determinations that wife: (1) did not quit her job in bad faith; (2) is not voluntarily

underemployed; and (3) could not meet her needs by obtaining full-time employment.[6] Primarily, husband observes that there is evidence in the record that would support the district court making the opposite finding on each of these issues. But, as noted above, the question we must resolve is whether evidence exists to support the findings the district court made, not whether evidence in the record would support a different finding. *See Kenney*, 963 N.W.2d at 222. Thus, husband must show the record *lacks* the evidence to support the district court's findings. *See id.*

We conclude the district court's findings regarding wife's income have support in the record. With respect to wife's former employment, wife's testimony supported the district court's determination that wife did not quit her employment in bad faith. Specifically, the district court found that wife testified credibly regarding her belief that she was terminated and that the relationship between wife and mother had deteriorated such that she could not reasonably return to MEF. We acknowledge that mother presented conflicting testimony, but the district court specifically found this testimony was "disingenuous," and we defer to the district court's credibility determinations. *See Alam*, 764 N.W.2d at 89. Thus, we conclude the district court's finding that wife did not quit her employment in bad faith is reasonably supported by the evidence as a whole.

---

[6] Husband also disputes the district court's failure to consider income generated from investing the cash equalizer paid to wife as part of the divorce. But husband failed to present any evidence that outlined the reasonable income wife could earn from investing this money. We therefore do not consider this issue. *See Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003) ("A party cannot complain about a district court's failure to rule in [the party's] favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question."), *rev. denied* (Minn. Nov. 25, 2003).

As for husband's allegation that the district court clearly erred in finding that wife is not voluntarily underemployed, the record reasonably supports the district court's finding that she could not obtain a job at the same salary she received at MEF. Specifically, the district court noted wife's education level, work experience, preferential treatment at MEF, attempts to obtain jobs after terminating her employment with MEF, her current position, and her interest in pursuing a career as a teacher. Although husband presented conflicting evidence regarding wife's job skills and employment capabilities, the district court found wife's evidence more credible and determined wife did not possess the necessary skillset for a higher paying office-management position. We defer to this credibility determination. *See id.* Thus, the district court's finding is not clearly erroneous because the record amply supports the district court's determination that wife was not voluntarily underemployed.

We next move to husband's argument that the district court clearly erred when it found wife did not have the ability to meet her own needs. For this finding, the district court credited wife's testimony that she is not underemployed and then, based on her current hourly rate and assuming full employment (40 hours per week), calculated her gross monthly income at $2,961. Because the district court found wife's reasonable monthly expenses were $5,720 per month, the district court determined that wife's income fell short of meeting her needs. *See Melius v. Melius*, 765 N.W.2d 411, 416 (Minn. App. 2009) (explaining that district court may consider obligee's ability to meet needs independently through full-time employment). The record supports this determination, and the district court's finding is not clearly erroneous.

For these reasons and taking the evidence in the light most favorable to the district court's decision, we conclude that the district court did not clearly err when it calculated wife's income and determined wife could not meet her needs. *See Vangsness*, 607 N.W.2d at 472.

### 2. Husband's Income

Husband also challenges the district court's findings with respect to his income. Husband asserts that the district court erroneously: (1) calculated the marital standard of living when it included his promotion; (2) found he left the Air Force Reserves in "bad faith"; (3) imputed an additional $475 per month in income based on his "side work"; and (4) failed to deduct $100 per month in income based on his decreased VA disability pay after wife is no longer his dependent. Again, husband primarily asserts that there is evidence in the record that could support the district court making the opposite finding. But our charge is to determine whether evidence exists to sustain the findings the district court made. *See Kenney*, 963 N.W.2d at 222.

Regarding husband's promotion, the record supports the district court's use of his most up-to-date income. While husband received his promotion and associated raise for only the last three years of the twelve-year marriage, the raise reflects his marital income. Additionally, the promotion was a natural progression in husband's career, which wife helped him achieve through working flexible hours to take care of the children. Therefore, the record reasonably supports the district court's finding, and the district court did not clearly err when it used husband's most up-to-date income when analyzing the financial condition of the parties.

11

As for husband's decision to leave the Air Force Reserves, the record reflects that he voluntarily left the position just seven months after petitioning for dissolution, and roughly two months after wife began her employment at the school. While husband explained that he left "to spend as much time as possible and have as much availability for being there for [his] kids and [his] family," this does not overcome his burden of proving the district court clearly erred by finding he left in bad faith when viewing the record in the light most favorable to the district court's decision. *See Vangsness*, 607 N.W.2d at 472. The district court specifically found that husband's explanation for why he quit the Air Force Reserves was not credible, and instead, based on the testimony at the hearing, found his "motive" was to reduce and limit his income for spousal-maintenance purposes. And we defer to this credibility determination. *See Alam*, 764 N.W.2d at 89.

Because the district court appropriately determined that husband left the Air Force Reserves in bad faith, it also did not clearly err when it imputed $475 in income for "side work." During the marriage, husband averaged $740 per month in additional income from the Air Force Reserves. Based on the "bad faith" finding, the district court could have imputed $740 per month to husband's income for spousal-maintenance purposes. *See Melius*, 765 N.W.2d at 414-15 (noting that district court may impute income to an obligor to determine spousal maintenance if it finds the obligor is underemployed in bad faith). Rather than imputing the entirety of husband's Air-Force-Reserves income, the district court determined that husband's testimony about various side work he completed during the marriage conveyed he could earn a "modest amount"—$475 per month—in additional income with the extra time he had because he left the Air Force Reserves. While husband

12

disagrees that side work can produce reliable and steady income, the district court had the discretion to impute up to $740 per month of income based on husband leaving the Air Force Reserves in bad faith. Therefore, the district court did not clearly err in its determination.

Lastly, husband argues that the district court erred when it did not reduce his VA disability pay to $1,064.44 per month (a $100 deduction) in accordance with his testimony that this decrease will occur when wife is no longer his dependent. Because husband's disability pay had not been reduced as of the time of trial, we cannot say that the district court clearly erred in finding husband's income based on his then-existing disability pay. But this does not preclude husband from moving to modify maintenance when any reduction occurs. *See* Minn. Stat. § 518.552, subd. 5b (2024) (addressing modification of maintenance).

For all these reasons and taking the evidence in the light most favorable to the district court's decision, we conclude that the district court did not clearly err when it calculated husband's income. *See Vangsness*, 607 N.W.2d at 472.

**B.**

Husband next challenges the district court's calculation of both parties' budgets. Husband argues the district court abused its discretion when it: (1) added $200 in automobile insurance to wife's monthly expenses; (2) included a $700 non-marital debt to wife's monthly expenses; and (3) reduced the food budget in husband's monthly expenses. To determine each parties' appropriate budget for spousal-maintenance purposes, the district court looks to "the standard of living established during the marriage." Minn. Stat.

13

§ 518.552, subd. 2(c); *see also Chamberlain v. Chamberlain*, 615 N.W.2d 405, 409-12 (Minn. App. 2000), *rev. denied* (Minn. Oct. 25, 2000).

Beginning with husband's challenges to wife's budget, we do not discern that the district court clearly erred. With respect to the $200 in automobile insurance, the record indicates that wife purchased a one-year car insurance policy for $2,379, or $198.25 per month, after husband gave her notice that he was removing her from his policy in November 2022. And regarding the $700 non-marital debt, although not corroborated by other evidence, the district court found that wife credibly testified about this debt, and we defer to the district court's credibility determinations. *See Alam*, 764 N.W.2d at 89. Further, even though wife incurred the debt after she left the marital home, the debt is still a monthly expense that can be considered when evaluating whether wife can maintain the marital standard of living. *See Melius*, 765 N.W.2d at 417 (determining that the district court did not abuse its discretion by including post-separation expenses in wife's budget, as wife testified credibly about expenses, and they related to the parties' standard of living during marriage). And because the debt is related to wife maintaining the marital standard of living, its inclusion is not "contrary to logic and the facts on record." *Madden*, 923 N.W.2d at 696. Thus, the district court did not clearly err when it included the debt in wife's estimated budget.

Moving to husband's challenge to his own budget, he asserts the district court clearly erred when it reduced his budget. On this issue, we agree with husband. Each party's budget included a total of $850 for food, divided between groceries, employment-related lunches, and eating out. Despite finding this budget was appropriate for wife, the

14

district court determined this amount was "inflated and unnecessary" as to husband. The district court then unilaterally reduced husband's food budget by $312 but made no findings to explain the disparity between the two food-related budget amounts. While the figures need not be equal, without findings to explain the reduction in husband's food budget when it approved the same amount for wife, we cannot say that the reduction in husband's food budget is supported by the record. We therefore remand this issue for further findings by the district court.

### C.

Finally, husband challenges the district court's decision that he has the ability to pay wife $1,600 in temporary spousal maintenance. As previously noted, one of the factors the district court must consider when awarding spousal maintenance is "the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance." Minn. Stat. § 518.552, subd. 2(g); *see also Peterka*, 675 N.W.2d at 358. "[W]hen determining a spouse's ability to pay spousal maintenance, a district court 'must make a determination of the payor spouse's net or take-home pay.'" *Schmidt v. Schmidt*, 964 N.W.2d 221, 227 (Minn. App. 2021) (emphasis omitted) (quoting *Kostelnik v. Kostelnik*, 367 N.W.2d 665, 670 (Minn. App. 1985), *rev. denied* (Minn. July 26, 1985)). "We have reversed spousal maintenance awards when, based on an analysis of the obligor's net income, we concluded the amount of the award was unreasonably high." *Rask v. Rask*, 445 N.W.2d 849, 854 (Minn. App. 1989) (concluding that award consuming 54% of the obligor's net monthly income is unreasonably high).

15

Here, the district court considered only husband's gross income when determining his ability to pay spousal maintenance and did not account for other expenses taken out of his paychecks that could significantly affect the amount of income available to pay a spousal-maintenance award, such as taxes, union dues, and association fees. Wife attempts to reconcile this issue by explaining that husband's gross income, minus his personal budget, spousal-maintenance payment, and child-support payment, leaves husband with enough money each month to cover the expenses taken out of his paychecks. But from our review of the record, wife's attempted reconciliation is not consistent with the paystubs husband submitted. And, on the record before our court, we cannot discern whether husband is appropriately withholding these amounts from his paycheck.

Accordingly, we remand the district court's spousal-maintenance award for further findings on husband's net income and ability to pay. *See Kostelnik*, 367 N.W.2d at 670.

\* \* \*

For the foregoing reasons, we remand the district court's spousal-maintenance award for further findings with respect to husband's: (1) food budget; (2) net income; and (3) ability to pay $1,600 in spousal maintenance. Upon readdressing those matters, the district court should reevaluate the spousal-maintenance award and make any appropriate changes in light of its findings. We otherwise affirm the district court. The district court may reopen the record at its discretion. Further, if when proceedings on remand occur husband's disability payments have changed, the district court may consider those changes. We express no opinion on how to resolve the remanded questions. Nor do we express an

opinion on whether, in light of the findings made on remand, the district court should alter

the amount of the maintenance award.

**Affirmed in part and remanded.**