In re the Marriage of Matthew Shane **MELIUS, petitioner, Appellant,**

v.

**Julie Ann MELIUS, Respondent** (A08–0826);

In re the Marriage of Matthew Shane Melius, petitioner, Appellant,

v.

**Julie Ann Melius, n/k/a Julie Ann Gomer, Respondent** (A08–1010).

Nos. A08–0826, A08–1010.

Court of Appeals of Minnesota.

May 19, 2009.

Edward L. Winer, Jana Aune Deach, Moss & Barnett, P.A., Minneapolis, MN, for appellant.

Alan C. Eidsness, Melissa J. Nilsson, Henson & Efron, P.A., Minneapolis, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; LANSING, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

On appeal in this spousal-maintenance dispute, appellant argues that the district court (1) incorrectly imputed income to him without finding him to be underemployed in bad faith, (2) overstated respondent's reasonable monthly expenses by considering her post-separation expenses, and (3) should have granted a new trial because it excluded certain admissible testimony as hearsay.

## FACTS

Appellant Matthew Shane Melius (husband) and respondent Julie Ann Melius (wife) were married in November 1985. Husband was a business executive during the marriage. In 2004 his income totaled $679,004, in 2005 it totaled $3,173,871, and in 2006 it totaled $2,510,233. Husband left his employment in January 2006. The parties dispute the reason why husband left his employment; husband claims that wife told him that she would leave him if he did not leave his employment, while wife denies this allegation. The parties separated shortly after husband's resignation, and wife moved to an apartment. When husband left his employment, he was subject to a non-compete agreement with his former employer. He was paid $1,800,000 in separation benefits under his non-compete agreement, which expired in January 2007.

After husband's non-compete agreement expired, he formed a consulting company with four other persons and invested $120,000 in the company. Husband testified at trial that he does not expect to receive income from this consulting company for two-to-five years. After that time, if the company performs, husband expects to earn approximately $130,000 in gross annual income. Wife has an elementary-education degree and worked periodically

as a teacher during the marriage. Wife is also the co-owner and co-operator of a Curves franchise. The parties stipulated that the value of wife's one-half share of this business is $19,050 and that wife receives a gross monthly draw of $1,800.

Prior to trial, the parties entered into a property-distribution agreement under which each party received approximately $2,580,000 in liquid and illiquid assets. The parties also agreed to share legal and physical custody of their minor children, then ages 17 and 16. A trial was held on the remaining issues, including spousal maintenance. Wife asked the district court to find that husband has the ability to earn $500,000 per year, but did not ask the court to find that he is underemployed in bad faith. The district court noted that husband testified at trial that jobs paying in the range of $300,000 per year were available, but that he had made a decision not to pursue those jobs based on his desired lifestyle and had not applied for any jobs after his non-compete agreement ended. The district court concluded that husband has "the ability to earn $300,000 annually" and gave husband six months after the entry of judgment to obtain such employment. This appeal follows.

## ISSUES

I. Did the district court abuse its discretion in determining husband's spousal-maintenance obligation based on a finding that husband has the ability to earn $300,000 per year without a finding of bad-faith underemployment?

II. Did the district court abuse its discretion by determining husband's spousal-maintenance obligation based on wife's spending during the post-separation period before the dissolution?

III. Did the district court abuse its discretion in excluding hearsay testimony offered by husband?

## ANALYSIS

### I

A district court generally has broad discretion in its decisions regarding spousal maintenance. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). The standard of review in spousal-maintenance determinations is whether the district court abused its discretion by improperly applying the law or making findings unsupported by the evidence. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn.1997). "A district court's determination of income for maintenance purposes is a finding of fact and is not set aside unless clearly erroneous." *Peterka v. Peterka*, 675 N.W.2d 353, 357 (Minn.App.2004). But this court reviews questions of law related to spousal maintenance de novo. *Van de Loo v. Van de Loo*, 346 N.W.2d 173, 175 (Minn.App.1984).

A court may consider an obligor's earning capacity in determining the obligor's ability to comply with an order for child support or spousal maintenance. *See, e.g., Hopp v. Hopp*, 279 Minn. 170, 176, 156 N.W.2d 212, 217 (1968). In 1982 the Minnesota Supreme Court extended this holding to the modification of decrees for child support and spousal maintenance, stating that when an obligor's income changed as a result of good-faith actions, "the child and the separated spouse should share in the hardship as they would have had the family remained together." *Giesner v. Giesner*, 319 N.W.2d 718, 720 (Minn. 1982); *see also Beede v. Law*, 400 N.W.2d 831, 835 (Minn.App.1987) (remanding a district court's modification of child support, which was based on a finding of earning capacity, because the court failed to find that calculating the obligor's income was impractical or that his income was unjustifiably self-limited). Before *Giesner*

and until 1991, no express statutory provision addressed the imputation of income to an unemployed or underemployed obligor; the supreme court's 1982 ruling in *Giesner* "filled this statutory gap." *Putz v. Putz,* 645 N.W.2d 343, 350 (Minn.2002) (citing *Giesner,* 319 N.W.2d at 719–20). And in *Veit v. Veit,* we held that income could be imputed to an obligor in the initial determination of child support. 413 N.W.2d 601, 606 (Minn.App.1987). We extended that principle to the initial determination of spousal maintenance in *Warwick v. Warwick,* 438 N.W.2d 673, 677–78 (Minn. App.1989).

While we observed in *Warwick* that the district court did not explicitly find bad faith, we concluded that the court "did not err in considering [the obligor's] earning capacity rather than his actual income" because the record supported the court's implicit finding that the obligor unjustifiably reduced his income. *Warwick,* 438 N.W.2d at 678. *Warwick* is therefore consistent with the rule that "earning capacity is not an appropriate measure of income unless (1) it is impracticable to determine an obligor's actual income or (2) the obligor's actual income is unjustifiably self-limited." *Beede,* 400 N.W.2d at 835; *see also Fulmer v. Fulmer,* 594 N.W.2d 210, 213 (Minn.App.1999) (affirming the use of earning capacity to determine spousal maintenance where it was impracticable to determine the obligor's income); *Doherty v. Doherty,* 388 N.W.2d 1, 3 (Minn.App. 1986) (affirming use of earning capacity to determine spousal maintenance where the district court found that obligor "had not been employed in good faith" for several months).

■ In 1991, the legislature adopted the provisions of 1991 Minn. Laws ch. 292, art. 5, § 76, at 1901–02, some of which are now included in Minn.Stat. § 518A.32 (2008). Section 518A.32 allows the district court to impute income for the purposes of computing child support when the obligor is "voluntarily unemployed or underemployed." These provisions do not require the district court to find bad faith in order to impute income. *See Walker v. Walker,* 553 N.W.2d 90, 95 n. 1 (Minn.App.1996) (stating that in determining child support after 1991 Minn. Laws ch. 292, art. 5, § 76, "courts are no longer required to find bad faith before considering an obligor's earning capacity"). But while the requirement that a court find bad faith or unjustifiable self-limitation of income is not included in the statutory considerations for imputing income in the context of determining child support, we have retained this requirement in the context of spousal maintenance. *Bourassa v. Bourassa,* 481 N.W.2d 113, 116 (Minn.App.1992) (remanding the court's determination of spousal maintenance in part because the court awarded maintenance based on obligor's earning capacity without finding bad faith); *see also Walker,* 553 N.W.2d at 95 n. 1 (noting that while a finding of bad faith is not statutorily required to determine child-support obligation based on obligor's earning capacity, "bad faith remains a prerequisite" to determining maintenance based on obligor's earning capacity).

■ Here, the district court noted that wife had not "sought to have a finding of bad-faith underemployment made" but rather asked the court to "make a finding that [husband] has the 'ability' to earn $500,000 annually." Wife argued, based on *Rauenhorst v. Rauenhorst,* 724 N.W.2d 541, 544 (Minn.App.2006) and *Schallinger v. Schallinger,* 699 N.W.2d 15, 22 (Minn. App.2005), *review denied* (Minn. Sept. 28, 2005), that the district court could base husband's spousal-maintenance obligation on a determination of his earning capacity without having to make a finding of bad faith or unjustifiable self-limitation of in-

come, as would be required were the court to impute income to husband. The district court accepted wife's argument and based husband's spousal-maintenance obligation on a finding that he has the ability to earn $300,000 per year, as supported by husband's testimony that jobs paying that amount were available to him. The district court acknowledged that its conclusion was "an extension of current case law."

But neither *Rauenhorst* nor *Schallinger* stands for the proposition that the district court may consider the ability of an obligor to earn a certain amount of money in computing spousal maintenance without a finding of bad faith or unjustifiable self-limitation of income. In *Schallinger*, we determined that the district court "did not 'impute' any specific amount of income" to the obligee, who had been employed full-time when she met and married the obligor but had worked part-time following the birth of their child through the time of separation and that the district court's findings "simply reflect[ed]" the obligee's ability to be self-supporting. 699 N.W.2d at 22. Similarly, in *Rauenhorst*, the obligee had been employed full-time earlier in the marriage and had been unemployed since before the birth of the couples' children and until after the couple separated, at which time she took a part-time job. 724 N.W.2d at 543. We determined that the district court "was actually finding that [the obligee] was capable of full-time employment." *Id.* at 544–45. *Rauenhorst* and *Schallinger* hold that a district court may determine that an obligee, who is capable of full-time work but is not working full time, could independently meet her needs without imputing income to the obligee. Neither holding pertains to a spousal-maintenance obligor, and in neither case was the amount of a spousal-maintenance obligation determined from the earning capacity of a spouse.

In this case, the district court also grounded its conclusion that an award of maintenance could be based on appellant's earning ability on Minn.Stat. § 518.552, subd. 2(a) and (g) (2008), which provides that maintenance computations shall consider the obligee's ability to meet needs independently and the obligor's ability to meet needs while meeting those of the obligee. But we reject the district court's interpretation of this provision to permit the computation of the amount of a spousal maintenance award based on an obligor's earning capacity, absent a finding of bad faith or unjustifiable self-limitation of income. Such an interpretation is contrary to our previous holdings requiring a finding of bad faith or unjustifiable self-limitation of income in order to impute income to a spousal-maintenance obligor. *See, e.g., Walker*, 553 N.W.2d at 95; *Bourassa*, 481 N.W.2d at 116. "[S]tatutes are not to be construed in derogation of well-established principles of the common law or equity unless such a construction is required by the express words of the statute or by necessary implication." *Putz*, 645 N.W.2d at 351. We therefore reverse the district court's calculation of spousal maintenance and remand for reconsideration of husband's spousal-maintenance obligation.

**II**

▮ In determining spousal maintenance, the district court must consider the standard of living established during the marriage. Minn.Stat. § 518.552, subd. 2(c) (2008). "The purpose of a maintenance award is to allow the recipient and the obligor to have a standard of living that approximates the marital standard of living, as closely as is equitable under the circumstances." *Peterka*, 675 N.W.2d at 358. Husband argues that the district court misapplied the law by considering wife's post-separation expenses during the

dissolution proceeding in determining the amount of spousal maintenance awarded to wife.

■ Husband presented the district court with extensive financial data collected during the period of marriage, which the district court considered credible. But the court rejected husband's characterization of the parties' lifestyle during their marriage as frugal, finding that husband attempted to downplay aspects of their budget and that husband's assignment of certain expenses to wife were "entirely subjective." Husband observes that at trial, wife conceded not being able to clearly recall what was spent in the three years prior to separation and argues that wife therefore had no understanding of the marital standard of living. Both parties agree that husband tracked their expenses during the marriage. But while wife presented no data from the period of marriage and instead submitted a budget that reflected her expenses for the post-separation period, the district court found that wife's testimony about her monthly expenses was as credible as husband's and that wife's proposed budget was more realistic than husband's proposed budget for her. Evidentiary weight and witness credibility are within the province of the factfinder. *See Nelson v. Nelson,* 291 Minn. 496, 497, 189 N.W.2d 413, 415 (1971) (stating that an appellate court is bound to accept the district court's factual findings when backed by adequate evidentiary support, especially when the findings are based on the district court's determinations of the relative credibility of parties and witnesses).

As husband observes, wife conceded that she included one-time expenses in her budget, but the district court adjusted its calculation of wife's budget accordingly by reducing it by the amounts of these expenses. The court's findings as to wife's budget contain numerous references to the parties' standard of living during the marriage, and the court reduced wife's budget for hair, nails, and spa services after finding that her proposed budget for these items exceeded her marital standard of living. We conclude that the district court's findings as to wife's budget and her marital standard of living are supported by the record and that the court did not abuse its discretion in using these findings to determine spousal maintenance.

**III**

■ Husband moved for a new trial on the ground that the district court abused its discretion by excluding the testimony of two witnesses as hearsay, and the district court denied his motion. This court reviews a district court's denial of a motion for a new trial for an abuse of discretion, but does not defer to the district court on matters of law. *Stoebe v. Merastar Ins. Co.,* 554 N.W.2d 733, 735 (Minn.1996). Evidentiary rulings are within the district court's discretion and are reviewed for an abuse of that discretion. *Braith v. Fischer,* 632 N.W.2d 716, 721 (Minn.App.2001), *review denied* (Minn. Oct. 24, 2001). A district court's ruling on the admissibility of evidence will only be reversed if the court abused its discretion and the abuse of discretion prejudiced the objecting party. *May v. Strecker,* 453 N.W.2d 549, 554 (Minn.App.1990), *review denied* (Minn. June 15, 1990).

At trial, husband intended to present the testimony of two former co-workers, who would have testified that husband declared to them that wife had given him an ultimatum that she would leave him if he did not leave his job, but the district court excluded the testimony of these two witnesses as hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing,

offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Husband argues that the witnesses' statements were not hearsay under rule 801(d)(1)(B), which provides that a statement is not hearsay if the declarant testifies at the trial, is subject to cross-examination concerning the statement, and the statement is "consistent with the declarant's testimony and helpful to the trier of fact in evaluating the declarant's credibility as a witness." Before a statement can be admitted under this rule, the "witness'[s] credibility must have been challenged and the statement must bolster the witness'[s] credibility with respect to that aspect of the witness'[s] credibility that was challenged." *State v. Nunn*, 561 N.W.2d 902, 909 (Minn.1997). The comments to this rule also state that the district court "may also exclude prior consistent statements that are a waste of time because they do not substantially support the credibility of the witness. Mere proof that the witness repeated the same story in and out of court does not necessarily bolster credibility." Minn. R. Evid. 801 1989 comm. cmt. The fact that husband repeated his account of wife's ultimatum both in court and to his co-workers out of court does not substantially support his credibility as to his account of the ultimatum.

Husband argues that the witnesses' statements were not hearsay under rule 801(d)(1)(D). Under this rule, a statement is not hearsay if the declarant testifies at the trial, is subject to cross-examination concerning the statement, and the statement describes or explains "an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." Minn. R. Evid. 801(d)(1)(D). Husband argues that his witnesses were describing husband's perception of the ultimatum that he claims wife made. But husband does not argue that he made any statements to either of his witnesses *while* or *immediately after* the ultimatum was made, and therefore this rule does not apply.

Husband argues in the alternative that if the witnesses' statements were hearsay, they were subject to an exception under rule 803(3). This rule provides: "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed" is admissible as an exception to the hearsay rule. Minn. R. Evid. 803(3). Husband argues that his witnesses' testimony evidenced his state of mind at the time he told them of wife's ultimatum. But husband does not explain how his state of mind, rather than whether he received this ultimatum, was at issue. Moreover, husband's witnesses were offered to testify about a statement that husband made from his memory, i.e., that husband was given the ultimatum, for the purpose of proving that he was given the ultimatum. Rule 803(3) specifically excludes any "statement of memory or belief to prove the fact remembered or believed."

■■■ Even if husband could show that the district court erred in excluding these witnesses' testimony, he must show that he was prejudiced by the error. An evidentiary error must be both an abuse of discretion and prejudicial to warrant reversal. *Uselman v. Uselman*, 464 N.W.2d 130, 138 (Minn.1990). An evidentiary error is not prejudicial unless it might reasonably have influenced the trier of fact and changed the result of the trial. *George v. Estate of Baker*, 724 N.W.2d 1, 9 (Minn.2006). As the district court reasoned, both in its order after trial and in considering husband's motion to amend its

findings to state that husband did not unilaterally decide to leave his position.

To consider the circumstances of the resignation brings the Court perilously close to injecting fault into this proceeding, which is barred by the legislature. But even if the Court were able to come to a conclusion, the conclusion would not impact the Court's decision as the Court must deal with the circumstances of these parties during the proceeding.

Because husband has not shown that the district court abused its discretion by excluding the testimony of husband's two coworkers or that he was prejudiced by this ruling, we reject his argument.

## DECISION

Because the calculation of spousal maintenance based on an obligor's earning capacity is tantamount to an imputation of income, which requires a finding of either bad faith or unjustifiable self-limitation of income, and because the district court did not find bad faith or unjustifiable self-limitation of income, we reverse and remand the district court's determination of spousal maintenance. We affirm the district court's findings pertaining to wife's budget and the marital standard of living, and we also affirm the exclusion of the testimony of husband's co-workers as hearsay.

**Affirmed in part, reversed in part, and remanded.**