*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0410**

In re the Marriage of:
Jodi Ann Larson, petitioner,
Appellant,

vs.

Brian Allen Larson,
Respondent

**Filed September 8, 2015
Affirmed
Worke, Judge**

Scott County District Court
File No. 70-FA-09-17323

Valerie A. Arnold, Kendal K. O'Keefe, Arnold, Rodman & Kretchmer PLLC, Bloomington, Minnesota (for appellant)

David C. Olson, Lanners & Olson, P.A., Plymouth, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant-mother argues that the district court abused its discretion by denying her request to relocate the children, by making findings that are not supported by the record and by misapplying the standard for relocation. She also argues that the district court

miscalculated the parties' gross incomes for child-support-modification purposes. We affirm.

## FACTS

The parties' stipulation to the dissolution of their marriage was incorporated into the judgment and decree filed on July 30, 2009. At the time, the parties owned a window-cleaning business and each earned $50,000 annually. Following the dissolution, respondent-father Brian Allen Larson took over the business. Appellant-mother Jodi Ann Larson continued to temporarily work for the business. The parties agreed to joint legal and joint physical custody of their children, J.L. (DOB 9/15/1993), L.L. (DOB 5/15/2000), and B.L. (DOB 3/24/2008). The parties agreed that the children would spend one-half time with each parent and that neither would pay child support, but that support would be reassessed when appellant-mother found new employment.

In June 2013, appellant-mother moved for sole physical custody of the two minor children[1] and for permission to relocate the children to Texas where her fiancé lives. L.L. had been residing primarily with appellant-mother. In December 2013, the district court awarded appellant-mother emergency temporary sole physical custody of B.L. after B.L. made allegations to a school social worker that respondent-father had been abusive.

On August 8, 2014, the district court found that appellant-mother met her burden of establishing a change in circumstances justifying the modification of custody, and awarded appellant-mother sole legal and sole physical custody of the children and

---

[1] J.L. is emancipated.

ordered respondent-father to pay child support. But the district court denied appellant-mother's request to relocate the children to Texas. This appeal follows.

**D E C I S I O N**

*Relocation*

Appellant-mother argues that the district court abused its discretion by denying her request to relocate the children to Texas, challenging several of the district court's findings. In reviewing a district court's relocation decision we are "limited to considering whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (quotations omitted). We will "set aside a district court's findings of fact only if clearly erroneous, giving deference to the district court's opportunity to evaluate witness credibility." *Id.* "Findings of fact are clearly erroneous whe[n] an appellate court is left with the definite and firm conviction that a mistake has been made." *Id.* (quotation omitted). Interpretation of a statute is a question of law reviewed de novo. *Id.* at 282.

When a party challenges a district court's findings, the party shall summarize the evidence "tending directly or by reasonable inference to sustain" the challenged findings. Minn. R. Civ. App. P. 128.02, subd. 1(c). "That the record might support findings other than those made by the [district] court does not show that the court's findings are defective." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000); *see Elliott v. Mitchell*, 311 Minn. 533, 535, 249 N.W.2d 172, 174 (1976) (affirming findings, but noting that evidence might have supported another conclusion); *Zander v. Zander*,

3

720 N.W.2d 360, 368 (Minn. App. 2006) (observing that, while the record could support a different decision, this court may not substitute its judgment for that of the district court), *review denied* (Minn. Nov. 14, 2006); *Crosby v. Crosby*, 587 N.W.2d 292, 296 (Minn. App. 1998) (explaining that, although appellant's citation of facts might prompt another fact-finder to reach different findings, sufficient contradictory evidence reasonably supported the district court's findings), *review denied* (Minn. Feb. 18, 1999). It is not the role of this court to reweigh the evidence presented to the district court. *Vangsness*, 607 N.W.2d at 475. An appellate court's "duty is performed when we consider all the evidence . . . and determine [whether] it reasonably supports the [district court's] findings." *Wilson v. Moline*, 234 Minn. 174, 182, 47 N.W.2d 865, 870 (1951).

If a parent has been awarded court-ordered parenting time, the other parent may not move the child's residence to another state except upon court order or with the consent of the other parent. Minn. Stat. § 518.175, subd. 3(a) (2014). In determining whether to permit a parent to move a child's residence to another state, the district court must base its decision on the best interests of the child, and consider eight statutory factors. *Id.*, subd. 3(b) (2014). Factors include:

> (1) the nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate and with the nonrelocating person, siblings, and other significant persons in the child's life;
> (2) the age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration special needs of the child;
> (3) the feasibility of preserving the relationship between the nonrelocating person and the child through suitable parenting

time arrangements, considering the logistics and financial circumstances of the parties;

(4) the child's preference, taking into consideration the age and maturity of the child;

(5) whether there is an established pattern of conduct of the person seeking the relocation either to promote or thwart the relationship of the child and the nonrelocating person;

(6) whether the relocation of the child will enhance the general quality of the life for both the custodial parent seeking the relocation and the child including, but not limited to, financial or emotional benefit or educational opportunity;

(7) the reasons of each person for seeking or opposing the relocation; and

(8) the effect on the safety and welfare of the child, or of the parent requesting to move the child's residence, of domestic abuse, as defined in section 518B.01.

*Id.*

### *Burden of proof*

Appellant-mother first asserts that the district court erred as a matter of law by misapplying the burden of proof with respect to the best-interest factors. *See Goldman*, 748 N.W.2d at 284 (stating that we may review whether the district court misapplied the law). Pursuant to section 518.175, subdivision 3(c) (2014), "if the court finds that the person requesting permission to move has been a victim of domestic abuse by the other parent, the burden of proof is upon the parent opposing the move." The district court determined that appellant-mother established that respondent-father had sexually assaulted her and appropriately placed the burden on respondent-father to establish that relocation is not in the children's best interests.

Appellant-mother suggests, citing to *Auge v. Auge*, 334 N.W.2d 393 (Minn. 1983), *superseded by statute*, Minn. Stat. § 518.175, subd. 3(b), (c) (2006), that respondent-father's burden was to show that removal was not only contrary to the children's best

interests, but would also endanger the children's physical or emotional health. But that was not respondent-father's burden. *See Goldman*, 748 N.W.2d at 283 n.5 (stating that *Auge* "has no remaining vitality because it has been superseded in its entirety by statute"). The statute initially places the burden on the parent requesting relocation. Minn. Stat. § 518.175, subd. 3(c). This burden simply shifts to the parent opposing relocation when the district court finds that the parent requesting to move has been a victim of domestic abuse by the opposing parent. *Id.* There is no requirement other than respondent-father showing that relocation is not in the children's best interests.

Appellant-mother argues that the district court's conclusion that respondent-father met his burden of showing that relocation is not in the children's best interests demonstrates the district court's misapplication of the burden of proof. However, the district court's findings do not suggest an erroneous shifting of the burden, but rather indicate that the district court rejected some evidence and found other evidence credible. *See Vangsness*, 607 N.W.2d at 472 (stating that appellate courts defer to district court credibility determinations).

### Best-interest factors

Because the district court has broad discretion in deciding what is in the best interests of the children, there is "scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Id.* at 477. The district court considered testimony from a five-day evidentiary hearing and custody-evaluation reports created by the court-appointed custody evaluator, Ann Bodensteiner, and a second evaluator hired by respondent-father before making findings on the factors below.

6

**(1) child's relationship with the parent proposing to relocate, the nonrelocating parent, siblings, and other significant persons**

The district court found that the children's strong relationship with appellant-mother will remain regardless of relocation. The district court found that the children's improving relationship with respondent-father, and their strong relationships with extended family in Minnesota, are significant and would be diminished by relocating. The district court found that the children's limited relationships with appellant-mother's fiancé, Johnny Bennett, and the children's brother, both in Texas, are of lesser significance.

Appellant-mother argues that the district court minimized the significance of the children's relationships with her, Bennett, and their older brother who attends college in Texas. She challenges the district court's finding that the children's relationship with Bennett "is good, but the extent of his involvement with the children so far is quite limited." Bennett testified that he met appellant-mother online in the summer of 2009. He personally met the children in March 2010. He testified that he sees the children when he visits appellant-mother. The children have visited him twice in Texas. This testimony supports the district court's finding that the children have had limited involvement with Bennett.

Appellant-mother also challenges the finding that the children's relationships with extended family would be significantly diminished if the children relocated. Appellant-mother's brother testified regarding respondent-father's good relationship with the children. The children's paternal grandmother testified regarding the children's extended

7

visits with her. Other relatives testified regarding the children's relationships with extended family. Respondent-father testified that the children spent a lot of time with extended family in western Minnesota. This testimony supports the district court's finding that the children's relationship with extended family in Minnesota is significant and would be diminished if the children relocated.

The district court considered all of the children's relevant relationships. It did not minimize the importance of the children's relationship with appellant-mother, but determined that it was in the children's best interests to continue improving their relationship with respondent-father, which would be difficult to do if the children relocated.

**(2) age and needs of the child, and the impact of relocation on the child**

The district court found that because of B.L.'s age, going months without seeing respondent-father would be harmful to their relationship and it would be nearly impossible to rebuild a bond. Appellant-mother challenges this finding, claiming that there is no evidence to support this factor. The record shows that B.L., at eight years old, has been affected by his parents' divorce. There was testimony from a school counselor that he is sad and has been impacted by his parents' estranged relationship. Because B.L. has been impacted by the divorce and because he is only eight years old, it was logical for the district court to infer that he will suffer emotionally if relocated away from respondent-father.

### (3) feasibility of preserving the relationship between the nonrelocating parent and the child through parenting time arrangements

The district court found that it is not feasible to reasonably maintain the parent-child relationship with 1,000 miles between the children and respondent-father. The district court noted that there is a rebuttable presumption that each parent receive at least 25% parenting time, which would be virtually impossible to accomplish if the children relocated. *See* Minn. Stat. § 518.175, subd. 1(g) (2014). The district court also found that the parties do not have substantial disposable financial resources permitting travel.

Appellant-mother argues that this finding is clearly erroneous because respondent-father's relationship with the children can be supported via telephone, the Internet, and other communications. But "electronic communication is not parenting time and does not count towards the 25% presumption." *Hagen v. Schirmers*, 783 N.W.2d 212, 219 (Minn. App. 2010). She also argues that if respondent-father were on track to earn approximately $90,000 in 2014, as he testified, he has the income to visit the children in Texas. She claims that respondent-father already visits their adult son in Texas where the son attends college. But the record shows that respondent-father's visits to Texas are infrequent, which does not constitute significant parenting time. Additionally, the district court found that respondent-father runs his own business. It is not feasible for respondent-father to effectively manage his business while frequently visiting Texas. And if he were to frequently visit Texas, the possibility that he would still be on track to earn approximately $90,000 annually would be hampered by his absence.

9

### (4) child's preference, considering the child's age and maturity

The district court determined that B.L. is too young for his preference to be considered, and that L.L., despite expressing her desire to relocate, does not have the maturity to comprehend the complexities of that decision. The district court cited to Bodensteiner's observation that children of L.L.'s age (14 at the time of the district court's order) "should be heard, but not be allowed to dictate." Appellant-mother argues that respondent-father did not provide any evidence that L.L.'s preference should not have been considered. She also challenges the district court's finding that L.L. would object to a parenting-time schedule.

In *Maxfield v. Maxfield*, the supreme court concluded that a ten-year-old child was "old enough and mature enough to express a preference where and with whom he wishe[d] to live." 452 N.W.2d 219, 219, 223 (Minn. 1990). In *Tinaza v. Tinaza*, this court concluded that the district court erred in not considering the preference of a "very mature 10 1/2 year old child." No. A14-0323, 2015 WL 46384, at *7 (Minn. App. Jan. 5, 2015). This court held that "[w]hile the district court erred in not considering [the child's] preference as to relocation, there is reasonable evidentiary support for the district court's findings with regard to the other statutory factors, most of which appear to support the district court's denial of mother's motion to relocate." *Id.* at *8.

Here, while L.L. was at an age when she could express her preference, the district court cited her apparent lack of maturity as a reason for not taking into consideration her preference. In both *Maxfield* and *Tinaza*, the court considered age and maturity. Further, even if the district court did not give enough weight to L.L.'s preference, this is merely

10

one factor in the overall consideration, and the district court's failure to consider L.L.'s preference alone would not provide a sufficient basis to conclude that the district court abused its discretion in denying appellant-mother's request to relocate.

**(5) pattern of conduct of the parent seeking relocation either to promote or thwart the relationship of the child and the nonrelocating parent**

The district court determined that, although Bodensteiner determined that appellant-mother attempted to promote the children's relationship with respondent-father, the court was "less certain." The district court stated that while there was "no evidence" that appellant-mother was "actually thwarting" the children's relationship with respondent-father, there was "enough evidence to say that this factor should not favor" appellant-mother because "she has not been willing or able to do enough to overcome some barriers and successfully promote" respondent-father's relationship with the children. The district court reasoned that the children would certainly have reconnected with respondent-father, after cutting off nearly all contact after "relatively minor incidents," had appellant-mother encouraged them to do so. The district court further reasoned that a parent intent on relocating could not also foster the relationship between the children and the nonrelocating parent. Appellant-mother argues that respondent-father provided no evidence that she failed to promote the children's relationship with respondent-father. But the district court's findings are based on reasonable inferences and do not defy logic.

11

### (6) whether relocation will enhance the quality of life for the parent seeking relocation and the child

The district court found that relocation would not have a significant financial benefit because appellant-mother did not have a job lined up, nor did Texas necessarily offer better job prospects than Minnesota. The district court further noted its skepticism of appellant-mother's contention that the quality of education in a rural Texas town is better than that of a favorable Twin Cities suburb. Finally, the court noted that although a move would benefit appellant-mother's emotional health, the court could not find the same for the children. Appellant-mother argues that respondent-father failed to present any evidence that relocating would not be beneficial to the children. But there is evidence that the children would benefit by remaining in Minnesota; they would continue to improve their relationship with respondent-father and maintain their strong connection with extended family and friends.

### (7) reasons for seeking or opposing relocation

The district court found that appellant-mother wanted to relocate to Texas to live with Bennett, to benefit financially, and because she believed that the children would benefit from distance between them and respondent-father. The district court determined that respondent-father opposed relocation because of the damage it will cause to his relationship with the children. Appellant-mother argues that respondent-father failed to present any evidence that relocation would damage his relationship with the children.

Respondent-father testified that his relationship with the children is improving tremendously in part because the children are learning that he is not the "person that is

12

being conveyed" to them. He testified that when the parties divorced, he believed that the children, particularly L.L., felt that they had to choose a side and wanted to support their mother. It is logical to infer that a great distance between respondent-father and the children would damage an improving relationship. And although appellant-mother claims that she is not seeking to relocate to thwart respondent-father's relationship with the children, she asserts that a reason to relocate is because she believes that the children will benefit from distance between them and respondent-father. While that may not be sufficient to show that appellant-mother is thwarting the relationship, it does support the district court's finding that she is not promoting the relationship.

**(8) effect on the safety and welfare of the child, or of the parent requesting to relocate, of domestic abuse**

The district court acknowledged that respondent-father sexually assaulted appellant-mother, and considered her emotional well-being, but determined that because respondent-father does not pose an ongoing threat to appellant-mother, relocation is not necessary for her safety. Appellant-mother argues that the district court simply gave respondent-father the benefit of the doubt. She also challenges the district court's findings that there was an allegation of respondent-father hitting L.L. with a belt, but the credibility of the allegation was diminished because when Bodensteiner asked L.L. if she had been abused, L.L. mentioned only "rough play." Appellant-mother also challenges the district court's finding that while something "bad" happened to B.L., nobody stated specifically what it was and it was possible that it was "roughhousing" as respondent-father suggested. There is evidence that respondent-father roughhoused with the

13

children. The record also shows that after the incident that B.L. reported to the social worker, no further complaints were made and no criminal charges were filed.

In a thorough and carefully analyzed order, the district court concluded that after balancing the best-interest factors, respondent-father established that relocation is not in the children's best interests. Appellant-mother claims that it is not a balancing test when the burden is on respondent-father. But it was a balancing test in that the district court was required to balance its findings on the best-interests factors when it addressed whether respondent-father had shown that relocation was not in the children's best interests. Additionally, the district court was required to weigh the facts on each side and determine whether respondent-father's facts/evidence outweighed appellant-mother's. Because respondent-father had the burden of proof, he was required to produce more evidence than appellant-mother, but the district court considered the volume of the evidence and the weight of the evidence, appropriately giving significant weight to maintaining the parent-child relationship. Appellant-mother basically argues that the district court treated her differently and more unfairly than respondent-father. While a different outcome could have resulted, the district court's findings are supported by the evidence and the reasonable inferences drawn therefrom. The record before this court supports the district court's conclusion.

### Child support

Appellant-mother also challenges the district court's modification of child support, arguing that its analysis with respect to the parties' gross incomes is flawed. The district court has broad discretion to modify child-support orders. *Putz v. Putz*, 645 N.W.2d 343,

347 (Minn. 2002). We will reverse a district court's child-support order only if "the district court abused its broad discretion by reaching a clearly erroneous conclusion that is against logic and the facts on record." *Id.* This court reviews questions of statutory interpretation and the application of a statute to undisputed facts de novo. *Brodsky v. Brodsky*, 733 N.W.2d 471, 477 (Minn. App. 2007).

At the time of dissolution, the parties stipulated that each earned $50,000 annually. Appellant-mother agreed that when she left the family business, she had the ability to earn a comparable salary. In April 2013, the parties stipulated to the appointment of a consensual special magistrate (CSM) to determine financial issues, including child support. The CSM found that appellant-mother's potential income was $50,000 per year based on the judgment and decree. Based on respondent-father's 2012 income-tax return, the CSM set his income at $95,726.

In January 2014, appellant-mother moved to modify child support, claiming substantially changed circumstances. The district court adopted the CSM's determination that appellant-mother was "voluntarily unemployed and that it was appropriate to continue to impute income to her in the amount of $50,000 annually." The court stated that there was no evidence showing a change in appellant-mother's ability to earn $50,000 per year or of her making reasonable efforts at obtaining employment. The district court determined that, although the CSM found that respondent-father's gross income was approximately $95,000 per year, because his business was subject to "significant year-to-year swings in earnings," it was fair to use a five-year average of gross income. Respondent-father earned approximately $36,000 in 2010, $75,000 in

2011, $95,000 in 2012, $50,000 in 2013, and a projected $95,000 in 2014. The average was approximately $70,000 per year. The district court made this modification in calculating the parties' child-support obligations.

Appellant-mother takes issue with the district court's modification of respondent-father's income while still imputing $50,000 to her, asserting that the court "applied unequal burdens." But the district court has "broad discretion" to modify a child-support order, and we will not reverse unless the district court reached "a clearly erroneous conclusion that is against logic and the facts on record." *Putz*, 645 N.W.2d at 347. The district court did not abuse its discretion by refusing to modify both parties' incomes when the record supports modification of only respondent-father's income.

Appellant-mother offers several arguments in support of her contention that the district court abused its discretion. First, appellant-mother argues that the district court failed to consider her testimony questioning the accuracy of respondent-father's income. Respondent-father is self-employed, and a self-employed individual could arguably have more flexibility with what is considered income. But he produced tax returns to support his income figures and appellant-mother failed to provide evidence that respondent-father misrepresented his income. Moreover, although appellant-mother was suspicious of respondent-father's income, she worked for the business and was aware of income shifts.

Second, appellant-mother argues that the district court should have set respondent-father's income at $95,726.00, his 2012 income, instead of calculating average earnings. A district court may choose to calculate gross income for child-support purposes by averaging earnings. *See Veit v. Veit*, 413 N.W.2d 601, 606 (Minn. App. 1987) (stating

16

that averaging income is proper because it "takes into account fluctuations and more accurately measures income"). In *Veit*, this court held that the district court did not abuse its discretion when averaging earnings from respondent-father's real-estate business over a 42-month span because his business was subject to fluctuations. *Id.*; *cf. Sefkow v. Sefkow*, 372 N.W.2d 37, 48 (Minn. App. 1985) (determining that the decision to average wages for an attorney whose business was substantially increasing each year was an inaccurate method of imputing support), *remanded on other grounds*, 374 N.W.2d 733 (Minn. 1985).

Appellant-mother's argument that the district court should have set respondent-father's income based on his 2012 income is unpersuasive, as this year was respondent-father's most successful year, and it is an inaccurate representation of his overall financial state. Similar to *Veit*, respondent-father's earnings fluctuate based on the success of his business. Respondent-father's business experienced difficulty in 2010, showed improvement in 2011 and 2012, but then showed decline again in 2013. A five-year average provides a more accurate assessment of respondent-father's income, and the choice of this method for calculating income for child-support purposes was within the district court's discretion.

Third, appellant-mother argues that the district court abused its discretion in denying her request for modification. A district court may modify a child-support order upon a showing of substantially changed circumstances making the terms of an existing order unreasonable and unfair. Minn. Stat. § 518A.39, subd. 2(a) (2014). Appellant-mother had the burden of showing a substantial change of circumstances. *See Bledsoe v.*

17

*Bledsoe*, 344 N.W.2d 892, 895 (Minn. App. 1984) (stating that the moving party has the burden of proof).

The district court found that there was no evidence of a change in circumstances in appellant-mother's ability to earn $50,000 annually. The district court also adopted the CSM's finding that appellant-mother was "voluntarily unemployed." If a district court finds that "a parent is voluntarily unemployed [or] underemployed . . . or there is no direct evidence of any income, child support must be calculated based on a determination of potential income." Minn. Stat. § 518A.32, subd. 1 (2014). "[I]t is rebuttably presumed that a parent can be gainfully employed on a full-time basis." *Id.*

Appellant-mother argues that the district court failed to consider evidence that after respondent-father sexually assaulted her she could no longer earn the same income. But appellant-mother failed to show that her employment situation changed since the CSM's decision issued in 2013; the sexual assaults[2] occurred in 2009 and 2010.

She also claims that the court failed to consider the difficulties she faced in finding employment as a result of respondent-father's failure to comply with the judgment and decree with respect to buying her out of the home. It is difficult to connect appellant-mother's argument regarding respondent-father's failure to buy her out of the home with her failure to become employed. If anything, this concern demonstrates appellant-mother's need to pursue employment.

Appellant-mother also asserts that she had been working as an insurance agent, but quit to be more available to B.L. A district court may consider caring for a child in

---

[2] Respondent-father was never charged with a criminal-sexual-conduct offense.

determining whether a parent is voluntarily unemployed, but the child's age is a factor. Minn. Stat. § 518A.32, subd. 5(4) (2014). The two minor children are approximately eight and fourteen years old and presumably attend school. The argument that childcare has become more demanding is inconsistent given that previously both parents worked full-time at the family business.

Appellant-mother also argues that the district court failed to find that she was underemployed in bad faith as required by *Melius v. Melius*. 765 N.W.2d 411, 415 (Minn. App. 2009). But *Melius* is a spousal-maintenance case; this court stated:

> Section 518A.32 allows the district court to impute income for the purposes of computing child support when the obligor is "voluntarily unemployed or underemployed." These provisions do not require the district court to find bad faith in order to impute income. . . . But while the requirement that a court find bad faith or unjustifiable self-limitation of income is not included in the statutory considerations for imputing income in the context of determining child support, we have retained this requirement in the context of spousal maintenance.

*Id.* Thus, the district court was not required to make a finding of bad faith.

Additionally, the CSM found that appellant-mother "testified that she has virtually no income [$33 per month], yet she has been able to meet her reasonable [monthly] living expenses [of $2,088] since . . . she stopped working at the family business." This incompatibility shows an incomplete picture of appellant-mother's income. *See Romuld v. Romuld*, No A07-1924, 2008 WL 3836658, at *3 (Minn. App. Aug. 19, 2008) (holding that the district court did not abuse its discretion in denying modification of child support when considering "disparity between [appellant]'s income and his monthly living

19

expenses"). With no direct evidence of income, child support must be calculated based on potential income. *See* Minn. Stat. § 518A.32, subd. 1. Appellant-mother previously stipulated that her potential annual income is $50,000.

The district court has broad discretion in deciding whether to modify child support and appellant-mother was unable to show that circumstances substantially changed to justify modification. Unlike respondent-father who introduced documentation of his earnings, appellant-mother's evidence was founded on testimony about her employment situation and belief that she could earn only $20,000 annually. *See Vangsness*, 607 N.W.2d at 472 (stating that appellate courts defer to district court credibility determinations).

**Affirmed.**