*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0699**

In re the Marriage of:

Kyle Ryan Johnson, petitioner A,
Respondent,

vs.

Danielle Marie Gilbert, petitioner B,
Appellant.

**Filed June 3, 2024**
**Affirmed; motion denied**
**Connolly, Judge**

Hennepin County District Court
File No. 27-FA-21-5248

Laurie Mack-Wagner, Calen E. King, Mack & Santana Law Offices, P.C., Minneapolis, Minnesota (for respondent)

Michael P. Boulette, Abby N. Sunberg, Taft Stettinius & Hollister LLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Gaïtas, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

Appellant-wife challenges the district court's denial, without an evidentiary hearing, of her motion to reopen the judgment dissolving the parties' marriage. We affirm. And

based on this ruling, we deny as moot respondent-husband's motion to strike portions of appellant's reply brief.

## FACTS

Appellant Danielle Gilbert (wife) and respondent Kyle Johnson (husband) were married in October 2017. A few years later, in 2021, the parties purchased a home for $966,050. Because the listing price of the home was more than the parties could afford, wife's father purchased the home for the parties in cash he obtained from a trust, giving the parties a loan of $230,000 in May 2021, and another loan of $608,949 in June 2021. Wife's father also gifted the parties $130,000 to put toward the home.

The parties closed on their home in June 2021, and on September 5, 2021, husband wrote his father-in-law a check for $70,000 as a partial repayment for the house. And after the parties executed a mortgage in favor of Edgewater Title Group LLC, wife's father received a check on behalf of the parties for $725,000 from Edgewater Title Group dated September 24, 2021. Consequently, by the end of September 2021, wife's father had received $795,000 of the $838,949 that he had loaned to the parties. The parties then executed a promissory note on September 27, 2021, in favor of wife's father for the remaining $43,949.43, which represented the balance owed to wife's father related to the purchase of the parties' home.[1]

---

[1] Husband claims that wife's father told him "about a week prior to the execution of the promissory note that it would never need to be repaid at all" and that the promissory note was created solely for "tax purposes."

2

In the meantime, in July or August 2021, wife informed husband that she was gay and that she wanted a divorce. The parties subsequently filed a joint petition for dissolution without children on October 11, 2021, and on November 19, 2021, the district court entered judgment on the divorce decree without a hearing. Pursuant to the parties' stipulated judgment, husband was awarded the marital home, including the equity and debt.

On November 11, 2022, wife moved to reopen the parties' November 19, 2021, judgment and decree "for fraud and misrepresentation as set forth in Minn. Stat. § 518.145, subd. 2(3) [(2022)], or in the alternative, reopen the parties divorce decree for mistake as set forth in Minn. Stat. § 518.145, subd. 2(1) [(2022)]." Wife claimed that the parties had a verbal agreement to share in the equity of the marital home, and that husband committed fraud with respect to the decree because he failed to abide by the parties' agreement, and instead awarded himself the home, including all of its equity.

In support of her motion, wife filed an affidavit alleging that husband was primarily responsible for the parties' finances during the marriage. Wife also claimed that, during their discussions related to their marriage dissolution, they agreed that husband would retain the home and reimburse wife for her marital equity in the homestead. According to wife, husband told her that he would "handle" the petition for dissolution, and after she moved out of the home, she went to the home and signed the "signatory page" of the decree in the kitchen without seeing the "decree itself." (Emphasis omitted.) Wife claimed that, although husband asked her if she wanted to see the document, she told him that she "trusted him" to put their agreement in the joint petition.

3

Wife alleged that, in September 2022, she began asking husband when she would be paid for her equity in the home, and that after receiving evasive responses, she contacted an attorney. According to wife, it was not until she consulted with an attorney that she became aware that husband had awarded himself the full equity in the marital home in contravention of what she alleged was their verbal agreement. Finally, wife submitted text-message threads between her and husband, which she claims show that husband agreed to split the equity in the home.

Husband opposed wife's motion and filed an affidavit supporting his position. In his affidavit, husband acknowledged that the parties "discussed various ways to deal with the house and discussed a buy-out of [wife's] equity (we did not discuss a buy-out amount or any specific terms), but [he] could not afford to do so." Husband also claimed that the "final agreement was that [he] would be awarded the house outright." According to husband, he believed that wife "felt bad for the position she had put us in and realized too that [they] stood to lose a lot of money in the house [they] had just purchased." Husband alleged that wife "was awarded more of other assets," and that they "came to an agreement that [they] both felt was fair." Husband further claimed that the parties "discussed getting attorneys," but that wife was "concerned about the process being drawn out," and that he "understood that [wife] wanted to get divorced as fast as possible so she could move on from [their] marriage and experience life as an out member of the LGBTQ community." Finally, husband claimed that, after filling out the divorce paperwork at wife's request, he left "all of it" on the kitchen counter for her to review and sign.

4

Following a hearing, the district court found that wife produced "no evidence, aside from her assertion," that the "parties agreed to split the equity in the home." Although the district court acknowledged the text messages submitted by wife, it found that these messages "do not show an agreement to divide the equity in the home. They only show that the parties discussed this possibility and do not show any details related to how the equity would be divided." The district court also found that wife "presents no evidence that she did not have a full opportunity to review the contents of the Joint Petition before signing it," and that the parties "knew what they were doing when they submitted the Joint Petition and that [wife] now wishes for the outcome to be different." As such, the district court concluded that there is "insufficient evidence" that (1) husband "took advantage of [wife] or that he committed fraud against her or the Court"; and (2) "the parties made a mutual mistake in not dividing the equity in the home." Finally, the district court determined that "an evidentiary hearing is not necessary in this matter, as the parties have submitted all relevant affidavit and documentary evidence necessary for the Court to engage in [its] analysis." The district court, therefore, denied wife's motion to reopen the parties' joint dissolution decree. This appeal follows.

## DECISION

### I.

Wife challenges the district court's denial of her motion to reopen the parties' dissolution decree for fraud without an evidentiary hearing. This court reviews such a decision for an abuse of discretion. *See Alam v. Chowdhury*, 764 N.W.2d 86, 89 (Minn. App. 2009) ("A district court's decision to reopen the judgment and decree based on fraud

5

will be sustained absent an abuse of discretion."). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted). We review the district court's findings of fact for clear error. *Knapp v. Knapp*, 883 N.W.2d 833, 835 (Minn. App. 2016). "The moving party bears the burden of establishing a basis to reopen the judgment and decree." *Thompson v. Thompson*, 739 N.W.2d 424, 428 (Minn. App. 2007).

Dissolution judgments and decrees are final when entered. *Id.* But a district court may relieve a party to a dissolution proceeding "from a judgment and decree, order, or proceeding" for "fraud, whether denominated intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party." Minn. Stat. § 518.145, subd. 2(3) (2022). A motion to reopen for fraud must be made within one year. *Id.*

When a party seeks to reopen a ruling in a dissolution case within the time limits of Minn. Stat. § 518.145, subd. 2, the standard for reopening is ordinary fraud, not fraud on the court.[2] *Doering v. Doering*, 629 N.W.2d 124, 129 (Minn. App. 2001), *rev. denied* (Minn. Sept. 11, 2001). "Ordinary fraud, in a dissolution context, does not require an affirmative misrepresentation or an intentional course of concealment because parties to a marriage dissolution have a duty to disclose all assets and liabilities completely and accurately." *Id.* at 130. This duty to disclose is an affirmative duty. *See id.* at 131 (stating that, "[b]ecause the confidential relationship between the parties [to a marriage] creates an

---

[2] Wife does not challenge the district court's denial of her request to reopen the judgment and decree for mistake under Minn. Stat. § 518.145, subd. 2(1).

6

affirmative duty to disclose, nondisclosure is sufficient to establish a breach of that duty, without evidence of intent," and that, "because the duty to make full and fair disclosure is an *affirmative* duty, there is no requirement that the moving party show that he requested the information that was not disclosed; the duty to disclose exists in the absence of such a request").

However, although a motion to reopen a judgment and decree for ordinary fraud must be brought within one year of entry of the judgment, no such time limit applies to motions to reopen a judgment and decree for fraud upon the court. Minn. Stat. § 518.145, subd. 2; *see Maranda v. Maranda*, 449 N.W.2d 158, 165 (Minn. 1989) ("The significance of a finding of fraud on the court is that it eliminates the time restriction for bringing a motion to vacate a judgment."). Generally, to establish fraud on the court, the moving party must show "an intentional course of material misrepresentation or nondisclosure, having the result of misleading the court and opposing counsel and making the property settlement grossly unfair." *Maranda*, 449 N.W.2d at 165. This standard for demonstrating fraud on the court is more strenuous than the standard for ordinary fraud. *Doering*, 629 N.W.2d at 129.

Wife argues that she is entitled to a reversal because the district court "required her to prove fraud on the court when ordinary fraud should have sufficed." Husband disagrees, arguing that "[f]raud on the court was the appropriate standard because [wife] requested the district court apply that standard."

We acknowledge that wife cited the fraud-on-the-court standard in her motion papers below and argued that standard to the district court. But wife also cited the ordinary

7

fraud standard to the district court. And the ordinary fraud standard articulated in *Doering* is the applicable standard in this case because wife filed her motion to reopen the dissolution decree within one year of entry of judgment. *See* Minn. Stat. § 518.145, subd. 2 (stating that a motion to reopen for fraud must be made within one year of entry of judgment). Therefore, we conclude that the district court erred by applying the fraud-on-the-court standard here.

Nevertheless, even under the ordinary-fraud standard, wife is unable to show that the district court abused its discretion by denying her motion to reopen the dissolution decree without an evidentiary hearing. In general, family-court motions are decided without oral testimony. Minn. R. Gen. Prac. 303.03(d)(1). And, as a general rule, a party in a family-law case is entitled to an evidentiary hearing only if he or she requests a hearing. Minn. R. Gen. Prac. 303.03(d)(2). If no request is made, motions are submitted "on affidavits, exhibits, documents subpoenaed to the hearing, memoranda, and arguments of counsel." Minn. R. Gen. Prac. 303.03(d)(1); *see also Doering*, 629 N.W.2d at 130 ("In family cases, non-contempt motions are decided without an evidentiary hearing, 'unless otherwise ordered by the court for good cause shown.'" (quoting Minn. R. Gen. Prac. 303.03(d))).

Here, the record reflects that wife never requested an evidentiary hearing. But, even if she had requested an evidentiary hearing, wife cannot show that the district court abused its discretion in declining to hold one.

A motion to reopen under section 518.145, subdivision 2, is an alternative to an independent action to relieve a party from judgment. *Doering*, 629 N.W.2d at 130. Thus,

8

the motion is procedurally equivalent to a summary-judgment motion in which the court does not weigh evidence but determines whether the movant has raised a material issue of fact. *Id.* (stating that "[a] district court may summarily dispose of a fraud claim (i.e., grant summary judgment) only when there is no genuine issue of material fact in dispute and where a determination of the applicable law will resolve the controversy" (quotation omitted)). Demonstrating a genuine issue of material fact likewise satisfies the good-cause standard for an evidentiary hearing under Minn. R. Gen. Prac. 303.03(d). *Id.* (establishing procedure on motion to reopen dissolution judgment for fraud under Minn. Stat. § 518.145, subd. 2).

In *Doering*, this court reversed a district court's refusal to reopen a dissolution judgment without an evidentiary hearing on the issue of fraud. *Id.* This court concluded that, "[b]ecause appellant's affidavits are sufficient to present a fact question of fraud, appellant established good cause for an evidentiary hearing on his motion to reopen the judgment." *Id.* at 132.

*Doering* is distinguishable from this case because wife's affidavit is insufficient to present a fact question of fraud. The crux of wife's fraud claim is that, unbeknownst to her, husband awarded all of the equity in the parties' marital home to himself in contravention to their oral agreement to split the equity in the house. To support her position, wife submitted an affidavit alleging that she and husband purchased a home they could not otherwise have afforded with the help of wife's father. Wife also alleged that, within weeks of closing on the new house, she informed husband that she is gay and that she wanted a divorce. Moreover, wife alleged that the divorce discussions were amicable,

9

that she and husband orally agreed that husband would "buy [her] out of the home as part of [their] property settlement," that she "stopped drafting the decree and trusted that [husband] would do it," and that she signed the signature page of the dissolution petition in the kitchen of the parties' house without reading it. In fact, wife acknowledged that husband "asked [her] if [she] wanted to see the document, but [she] told him that [she] trusted him and that [she] did not need to see it." Wife further acknowledged signing the dissolution petition without reading it, despite the signature page stating, "I declare under penalty of perjury that everything I have stated in this document is true and correct." Although wife alleges that the dissolution decree awarded the house to husband in contravention of their oral agreement, the only evidence she offers in support of her position is some text messages between husband and wife in which the parties discussed splitting the equity in the house. But these text messages do not adequately allege the actual existence of an agreement to split the equity in the house; they simply demonstrate that the parties discussed the issue. And wife's bare allegations that she and husband agreed to split the equity in the house are insufficient to create an issue of fact of fraud. *See McBee v. Team Indus., Inc.*, 925 N.W.2d 222, 230 (Minn. 2019) (stating that a genuine issue of material fact may not be established by "unverified and conclusory allegations" (quotation omitted)); *see also Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988) (stating that a party opposing a motion for summary judgment cannot rely on the pleadings' bare allegations, but must specifically show there are genuine issues of fact). Therefore, viewing the evidence in the light most favorable to wife, we conclude that wife is unable to show that the district court abused its discretion in declining to hold the evidentiary

10

hearing she did not request, and the underlying premise for which—the existence of an agreement between the parties—she failed to adequately allege.

## II.

Husband moved to strike "all references in [wife's] reply brief . . . regarding the darker signature page of the Stipulated Judgement and Decree[3] because [wife] did not raise this issue in her opening brief." (Footnote added.) Because we affirm the district court's order, we deny husband's motion to strike as moot.

**Affirmed; motion denied.**

---

[3] The record reflects that the signature page of the parties' dissolution petition is darker than the other pages of the petition. Although wife alleged that the darker signature page was indicative of husband's fraud, the district court disagreed, finding logical husband's explanation that "he has a flat top scanner, that it is cumbersome to scan an entire document, that the document was filled out electronically, and that he only scanned their signature page after both parties signed."